[S. F. No. 7492. In Bank.—June 21, 1916.]

MARYLAND CASUALTY COMPANY (a Corporation), et al., Petitioners, v. A. J. PILLSBURY et al., Commissioners Composing the Industrial Accident Commission of the State of California, et al., Respondents.

WORKMEN'S COMPENSATION ACT—CASUAL EMPLOYMENT OUTSIDE OF EMPLOYER'S OCCUPATION—MACHINIST EMPLOYED BY FARMER TO REPAIR TRACTOR.—A machinist employed by the day by a farmer to repair a traction engine used on his farm in connection with his farming operations, and whose term of employment was for the period reasonably necessary for the repair of that particular machine, is an employee whose employment is both casual and outside of the usual course of his employer's occupation, within the meaning of section 14 of the Workmen's Compensation Act, and for an injury suffered by him in doing such work he is not entitled to the indemnity therein provided.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission.

The facts are stated in the opinion of the court.

Myrick & Deering, and James Walter Scott, for Petitioners.

Christopher M. Bradley, for Respondents.

MELVIN, J.—*Certiorari* directed to the Industrial Accident Commission. The writ was issued as prayed and the return of the respondent commission reveals the following facts:

In a proceeding before the commission entitled "Charles H. Snow, Applicant, v. Jos. R. Harris, Defendant," it was decided that Harris was responsible under the terms of the Workmen's Compensation, Insurance and Safety Act, and an award was given accordingly. Harris was insured by the other petitioner, Maryland Casualty Company, but by the contract that corporation did not agree to indemnify him for liability which might be imposed upon him by virtue of the said compensation act. The Maryland Casualty Company, however, waived this exception and agreed to be responsible for any liability imposed upon Harris by reason of the accident to Snow. Joseph R. Harris was a farmer engaged in

conducting the "Kelly Ranch," so-called, in Napa County. On September 1, 1914, he employed Charles H. Snow to repair a tractor used on the ranch in plowing, pulling wagons, and for other purposes in connection with the farming operations. When Snow was hired it was understood that if he so desired, he might remain in the employ of Harris after the completion of the repair work on the tractor to drive that machine during the progress of the farming work, but before he was injured he had told his employer that he did not care to remain after he should have finished the repairs to the tractor. Snow worked for Harris from the 1st to the 11th of September making necessary repairs on the tractor. This work was interrupted on a few occasions, when he helped in piling hay in the barn and when he operated a gasoline engine used to furnish power for a pump. On September 11th Snow and an assistant were making of babbitt metal a new bearing on an axle. In this process it was necessary to pour the heated molten metal into a box around the axle. After the metal had been poured, and while Snow was examining it, an explosion took place which blew the hot babbitt metal into his face and caused him to suffer very serious injuries. Subsequently he applied for and was granted compensation under the terms of the Workmen's Compensation, Insurance and Safety Act [Stats. 1913, p. 279].

After reciting the foregoing facts the Industrial Accident Commission, in the opinion delivered on giving judgment in favor of the applicant, Snow, said:

"In the judgment of this commission the labor of a machinist repairing farm machinery upon the farm is no more farm labor than it would have been if the machine had been taken to the shop of applicant at Napa and had been repaired there.

"This conclusion is not weakened by the fact that, two or three times during the ten days' employment, applicant was called to assist for half an hour or so at each time in stowing away hay in the barn of defendant where some extra help was needed. This was regarded by applicant as an accommodation and not in the line of his employment, and is only such a service as any well-disposed person would be inclined to render upon request."

Petitioners here contend that Snow was either a farm laborer, and therefore not within the provisions and benefits of

the compensation act, or a mere casual employee not entitled to the indemnity therein provided.

Section 14 of the compensation statute as it existed at the time of the injury suffered by Snow defined "employee" as used in certain sections of that act, and excluded from the definition "any person whose employment is both casual and not in the usual course of the trade, business, profession° or occupation of his employer, and also excluding any employee engaged in farm, dairy, agricultural, viticultural or horticultural labor, in stock or poultry raising or in household domestic service."

Taking the finding of the commission as correct, and conceding that the labor of an expert machinist, under the facts, is no more farm labor than it would have been if the machine had been taken to Snow's shop at Napa and there repaired, we see no escape from the conclusion that the employment was both casual and not in the usual course of the occupation of Harris, which concededly is farming. True, there was testimony which tended to show that Snow had been hired to run the tractor, incidentally to keep it in repair, and to perform other duties about the farm, and if there had been a finding that such were the facts, we might be compelled to hold that Snow came within the definition of a farm laborer. The accident commission has held that a woodchopper engaged in cutting and burning trees in clearing land for farming purposes is engaged in farm labor. (*Whitney* v. *Peterson*, 1 Decisions of the Industrial Accident Commission of California, p. 306.) It has also been held that when land has been cleared for agriculture, one who operates a saw to cut the wood on the cleared land into suitable lengths for sale is engaged in farm labor. (*Miller* v. *Algar*, 2 Industrial Accident Decisions, 584.) If Snow had been found to be an employee on the farm who, as part of his duties, was required to repair the tractor, we could not see how he could be adjudged not a farm laborer under those decisions. But the Industrial Accident Commission has determined that he was engaged for the single purpose of repairing the tractor, and there is basis in the evidence for that decision. ·

Respondents' counsel concedes that the commission may not lay down an arbitrary rule that an employee engaged in work of any sort for a period of more than a given number of days is thereby removed from the class of casuals. But we are re-

minded by him that the exclusion of an employee from the benefits of the act depends upon two concurring circumstances: (1) The employment must be casual *and* (2) outside the usual course of his employer's occupation. Counsel insists that the employment was permanent, as being "for an indefinite period which may be severed by either party" (citing Bouvier's Law Dictionary), and that it was "in the usual course of the business of Harris." True, he admits that the latter contention "would seem, at first blush, to involve an inconsistency," but he says that "it was part of Mr. Harris' business to have his tractor put in order for use."

We do not see that the definition of permanent employment given by Bouvier fits the hiring of Snow, who was employed by the day. There was nothing indefinite about it except the time which might be consumed in making the necessary repairs on the tractor, but nevertheless Snow was hired for the definite period reasonably necessary for the fixing of that particular machine. If he had been employed to repair tractors as long as the arrangement proved agreeable to him and to Harris, that might have been a permanent hiring, but he was engaged for one specific piece of work. He was no more a permanent employee than the shoemaker to whom, from time to time, Mr. Harris took his shoes to have them mended. His labor was "casual" in the sense of being "incidental" and "occasional," and that undoubtedly is the definition of the word as used in the statute. The word has been defined by the supreme judicial court of Massachusetts as indicating "something which comes without regularity and is occasional and incidental," and that court held that a waiter employed by a caterer to serve at an out-of-town banquet is a casual employee. (*Gaynor's Case*, 217 Mass. 86, [L. R. A. 1916A, 363, 104 N. E. 339].) In New Jersey it has been held that employment is not casual—that is, arising through accident or chance—where one is hired to do a particular part of a service recurring somewhat regularly with the fair expectation of its continuance for a reasonable period. That was a case in which the deceased, a stevedore, was frequently called upon to perform work when the "prosecutor" had a ship in port to load or to unload. (*Sabella v. Brazileiro*, 86 N. J. L. 505, [91 Atl. 1032]; 87 N. J. L. 710, [94 Atl. 1103].) We are not unmindful of the fact that the New Jersey statute

excludes all casual employees, while the New York act uses the disjunctive "or" where the Californian law uses the conjunctive "and." In those states it is not necessary that the casual employment must be in an occupation other than in the usual business of the master in order that the claim of the person hired shall be barred; but nevertheless the definitions of the term "casual" by the courts of ultimate authority in those states are valuable.

If the view that this employment was in the usual course of the occupation of Mr. Harris as a farmer be correct, the distinction sought to be established by the statute has no force whatever, because following to its logical limit the argument of counsel that "it was part of Mr. Harris' business to have his tractor put in order for use," we would have to say that the man who made his clothing for use on the farm, the cobbler who mended his shoes, the locksmith who, at a shop in town, filed a key for the lock on the smokehouse door, and countless others who rendered services of any sort relating to the conduct of his farm were engaged in his occupation. We do not see how such meaning may be attributed to the words of the statute. It is true that the tractor had been used and was intended for use on the farm. Suppose Mr. Harris should decide before plowing time that it was cheaper to use mules and should sell the tractor, might we then say that the repairer's work was "farming" in any sense of the term? As an illustration we are told that it is part of a farmer's business to store his crops, that building barns for that purpose is part of his occupation, and that the repairer of the tractor is in the same category as a workman on the barn. There are two differences between the machinist who mends a tractor and the men building a barn on a ranch. In the first place, the barn becomes a part of the farm; the tractor does not. In the second place, the barn generally is useful only for farm purposes; the tractor may be used for many things not connected with a farm. When a tractor is brought to a shop for repairs—and the finding of the commission makes this just that sort of a case—the repairer is in exactly the same relation to the owner of the mechanism whether the machine is to be used on a farm, to haul wagons on the highway, or to drag field pieces across the plains of Mexico. He is not a farmer in one case or engaged in the usual course of farming, a freighter in another, and a soldier in the third.

It is clear that the repairer, under the facts found by the commission, was a person whose employment was both casual and not in the usual course of the occupation of his employer. It follows that, under the law in force at the time of the accident described in the findings of the Industrial Accident Commission, he was not entitled to the compensation awarded by said commission.

The award is, accordingly, annulled.

Henshaw, J., Shaw, J., Sloss, J., Lawlor, J., Lorigan, J., and Angellotti, C. J., concurred.