[S. F. No. 7675. In Bank.—November 10, 1916.]

## LONDON AND LANCASHIRE GUARANTEE AND ACCIDENT COMPANY OF CANADA, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

WORKMEN'S COMPENSATION ACT—SECTION-HAND ON RAILROAD—FIGHTING FIRE ON ADJOINING LAND.—A section-hand employed on a railroad who was sent by his foreman, at the request of the owner of an adjoining ranch, to help in extinguishing an accidental brush fire thereon, was not in the employ of the railroad while so doing.

ID.—FIGHTING ACCIDENTAL FIRE ON RANCH—CASUAL EMPLOYMENT—USUAL COURSE OF BUSINESS OF FARMER.—The employment of such person by the ranch owner to help in fighting the accidental brush fire was both casual and not in the usual course of the business of the employer as a farmer, and, under section 14 of the Workmen's Compensation Act, the employer was not liable to compensate the employee for an accidental injury suffered by him while doing such work.

ID.—INJURY OCCURRING AFTER CESSATION OF EMPLOYMENT.—An injury to such employee, occurring after he had ceased to fight the fire, and had been paid for his time, and when he had left the precise place of his labors and was ready to go home, but while he still remained on the ranch, did not arise out of and in the course of his employment, within the meaning of section 12a of the Workmen's Compensation Act.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

R. P. Wisecarver, for Petitioner.

Christopher M. Bradley, for Respondents.

SLOSS, J.—*Certiorari* to review an award of the Industrial Accident Commission.

The estate of Luigi Marre, deceased, was the owner of a ranch, containing some eight thousand acres, in San Luis Obispo County, and was operating it through G. O. Marre, the administrator of the estate. The line of the Pacific Coast Railway Company runs along one side of the property. On November 23, 1914, a fire started on the Marre ranch, and was spreading through the brush and grass growing thereon. G. O. Marre, the administrator, gathered a group of men to fight the fire. He applied for help to the foreman of a section-gang working on the Pacific Coast Railway, and the foreman sent a number of the section-hands. Among these was the applicant Elia Mazzini. Mazzini went to work under Marre's direction, and was engaged in fighting the fire from 6 o'clock P. M. until midnight, by which time the fire was under control. The work had ended, and the men collected in a group preparatory to walking to their homes. They stopped for a brief period, and partook of drinks furnished by Marre. They were, at the time, still upon the Marre ranch. During this stop, Mazzini walked backward a short distance and in so doing fell, breaking his leg. The commission found that his fall was due to his stepping into a squirrel hole.

Mazzini was paid at the rate of one dollar an hour for the six hours during which he had worked. This payment was made by the estate of Marre.

Mazzini filed his application for compensation, bringing in both the railway company and the Marre estate as parties defendant. The commission concluded that Mazzini's injury was not received while he was in the employ of the railway company, and dismissed the proceedings as to that company and its insurance carrier. In this the commission was clearly

right. It did, however, find the facts necessary to impose a liability upon the estate of Marre, and made an award against the petitioner herein, the insurance carrier for said estate. It may be added that the estate of Marre had elected, in accordance with section 87 of the Workmen's Compensation Act [Stats. 1913, p. 319], to come under the compensation provisions of the act, which, by reason of the agricultural character of the industry, would not otherwise have affected it.

The petitioner attacks the award on two grounds. Both, we think, are well taken.

(1) The statute excludes from its benefits "any person whose employment is both casual and not in the usual course of the trade, business, profession or occupation of his employer." (Sec. 14.) Plainly Mazzini's employment was casual, and the commission so found. Was it in the "usual course of the business" of the employer? The estate of Marre is conducting a ranch. Its "business" is that of farming. A fire on the ranch would endanger the property used in the business, and hamper the prosecution of that business. The owner would, of course, be interested in preventing the spread of fire on his property. But we do not think that it can fairly be said that the stopping of fires is, for this reason, within the usual course of the business of a farmer. A man conducting any business is concerned about the preservation and protection of the property employed in the business. It would hardly be said, however, that the fighting of a fire which threatens the place in which a commercial or manufacturing enterprise is conducted is within the usual course of said business. The phrase "course of business of the employer" is found in the English Compensation Act. In cases arising under that act the expression is held to cover the normal operations which form part of the ordinary business carried on, and not to include incidental and occasional operations having for their purpose the preservation of the premises or the appliances used in the business. Thus in *Spiers* v. *Elderslie Steamship Co., Ltd.* (2 B. W. C. C. 205), it was held that scaling the boiler of a ship was not within the course of the trade or business of the ship owner. The same principle was applied in *Hayes* v. *S. J. Thompson Co.* (6 B. W. C. C. 130), where the overhauling of a barge was held not to be in the course of the business of the barge owner. The English statute defines the term "workman" as one

employed "in the course of or *for the purposes* of the trade
or business." Another section of the same act uses the words
"for the purposes of the employer's trade or business."
Certain English cases, relied on by the respondents, are based
upon this form of expression, which is not found in our act.
But even under the broader language just quoted, one of the
learned judges who decided the case of *Hill* v. *Begg* (1 B. W.
C. C. 320), said: "I am not prepared to extend the burden
of the act to householders who simply call in a man, not
part of their regular establishments, to do a particular job
as and when necessity arises." Similarly, in *Rennie* v. *Reed*
(1 B. W. C. C. 324), where the workman claiming compen-
sation had been called in about once a month to clean the
windows of a doctor's home, in which he had his office, it was
held that he was not employed for the purposes of the em-
ployer's trade or business.

Beyond all this, the employment must, under our statute,
not only be in the course of the business of the employer, but
in the *usual* course of such business. To say that the fight-
ing of an accidental fire, which may occur only at intervals
of years, is within the definition of the statute is to take all
meaning and effect from the word "usual." The occasion
calling for the employment of the applicant was accidental
and unforeseen. It was not necessarily incidental to the
conduct of the business. The employment was the product
of an emergency, and its every characteristic marked it as the
direct opposite of an employment in the usual course of the
employer's business. (See *Maryland Casualty Co.* v. *Pills-
bury,* 172 Cal. 748, [158 Pac. 1031].)

(2) We also agree with petitioner's contention that Maz-
zini's injuries did not arise out of and in the course of his
employment. (Workmen's Compensation Act, sec. 12a.)
Mazzini was employed to fight the fire. He worked at this
employment for six hours at the rate of one dollar per hour,
and was paid for this time. He was injured after his work
had ended, when he had left the precise place of his labors,
and was ready to go to his home. As a general rule, it may
be stated that "there are excluded from the benefits of the
act all those accidental injuries which occur while the em-
ployee is going to or returning from his work." (*Ocean
Accident & Guarantee Co.* v. *Industrial Accident Comm., ante,*
p. 313, [159 Pac. 1041].) There is nothing to take the pres-

ent case out of the principle just stated.    The respondent
suggests that there is some evidence that the men fighting the
fire had been directed to "watch the fire in case it get away
again."    But the commission did not accept this testimony,
its finding being "that the said accident happened a few
minutes after the actual work of fighting said fire had been
concluded."    The fact that Mazzini was still upon the prem-
ises of the Marre estate does not, in and of itself, justify a
different conclusion.    (*Hills* v. *Blair*, 182 Mich. 20, [148
N. W. 243]; *Gilmour* v. *Dorman, Long & Co., Ltd.*, 4 B. W.
C. C. 279.)
The award is annulled.

Shaw, J., Melvin, J., Henshaw, J., and Angellotti, C. J.,
concurred.