[S. F. No. 7568. In Bank.—December 12, 1916.]

LA GRANDE LAUNDRY COMPANY (a Corporation), Petitioner, v. A. J. PILLSBURY et al., as Constituting the Industrial Accident Commission of the State of California, Respondents.

WORKMEN'S COMPENSATION ACT — LAUNDRY CORPORATION — CARPENTER EMPLOYED TO REPAIR PRIVATE HOUSE OF STOCKHOLDER — NONLIABILITY OF EMPLOYER.—A corporation engaged in the principal business of running a laundry, but which was accustomed, as an accommodation to its stockholders, to send a carpenter, regularly employed by it, to make necessary repairs upon their private properties, is not liable, under the Workmen's Compensation Act, for the death of a person whom it had employed as an assistant to such carpenter in doing a particular piece of repair work on the house of a stockholder, and who was killed while engaged in such work.

ID.—EMPLOYMENT CASUAL AND NOT IN USUAL COURSE OF EMPLOYER'S BUSINESS.—The employment of such assistant was both casual and not in the usual course of the employer's business, within the meaning of section 14 of the Workmen's Compensation Act.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

Eugene F. Conlin, and Neal Power, for Petitioner.

Samuel Knight, F. E. Boland, and James J. McKenna, for New England Equitable Insurance Company.

Christopher M. Bradley, and W. H. Pillsbury, for Respondents.

MELVIN, J.—A writ of *certiorari* was issued for the purpose of reviewing the action of the Industrial Accident Commission in awarding to Mary E. English compensation from La Grande Laundry Company (a corporation), because of the death of her husband.

There is very slight conflict with reference to the facts. It appears from the testimony taken before the Industrial Accident Commission that Charles P. Cain was the president and manager of La Grande Laundry Company, and he and his wife were stockholders. There was no formal proof of the sort of business in which the corporation was engaged, but the name furnishes some hint at least upon that subject. Indeed, there can be no reasonable doubt that the principal business of the corporation was running a laundry, as the witnesses spoke of the "laundry" not merely as a corporation but as a place of business. There was testimony at the hearing given by Mr. Cain to the effect that the company was not in the business of repairing houses. It was the custom, however, for Mr. Cain to send a carpenter regularly employed by the La Grande Laundry Company to make necessary repairs about the private properties of the stockholders. When the work required less than two days of the carpenter's time upon any given piece of property, no charge was made against the owner, but when more time was necessary, the expense was charged to the stockholder receiving the benefit of the labor. This custom arose, as Mr. Cain said, when the laundry was operated by a brother and a sister in partnership. They owned a number of pieces of property before the fire of 1906, and the carpenter who was employed at their place of business used to make necessary repairs on their houses. After a sort of family corporation was organized, this custom was kept up. It did not appear how often such services had been performed for stockholders prior to March, 1915.

Mr. William English was a carpenter regularly employed by the La Grande Laundry Company. At some time in February, 1915, Mr. Cain directed him to go to a house in San Francisco owned by Mrs. Cain, one of the stockholders of the corporation, and there to tighten some plate glass in certain doors. The carpenter informed Mr. Cain that he could not perform the work unaided, owing to the weight of the doors,

and accordingly he was instructed to employ as an assistant his brother, Richard E. English, who had been hired once or twice before by the corporation for similar services. He did as directed, and on March 2d, while the work was in progress, William English went away from the house for a short time. On his return he was told by his brother that there were some leaks in the roof which had been called to the latter's attention by painters who were at work there. Richard English returned to the roof while his brother was employed on some work about the premises, and while there said Richard lost his footing and fell to the ground below and was killed.

The Industrial Accident Commission found that deceased was a casual employee of the La Grande Laundry Company, but that the accident and death "arose out of and happened in the course of said employment."

In the recent case of *Maryland Casualty Co.* v. *Pillsbury,* 172 Cal. 748, [158 Pac. 1031], we had occasion to discuss section 14 of the compensation statute, which excludes from the definition of "employee" any person whose employment is both casual *and* not in the usual course of the employers' business. We there held that a workman engaged upon the task of repairing a tractor to be used in drawing plows and wagons for the farming work was not in the usual course of his employer's business. The proof in this case did not support the finding that Mr. Richard English was engaged in the usual business of the laundry. On the contrary, the evidence fairly showed that work of this sort was a mere accommodation undertaken, without charge, by the corporation for its stockholders, and not at all as a part of the laundry *business.* If Mrs. Cain had employed the carpenter to perform a job repairing her doors and he had been killed under the circumstances shown by the record, she would be exempt from liability under the fourteenth section of the statute relating to workmen's compensation. The corporation acting for her may not be charged with liability unless making repairs was a part of its "*usual* business," as that term is commonly understood. Uncompensated favors extended occasionally to its stockholders surely do not constitute a "business" of a corporation, "usual" or otherwise. The English statute is even broader in its scope than ours, because it omits the word "*usual.*" In *Bargewell* v. *Daniel,* 98 L. T. 257, the court was considering the case of a workman who earned his living

doing repair work for people residing in the community in which he lived. Mrs. Daniel, the defendant, owned certain cottages which were let to tenants. She collected her own rents, made her own repairs, and she had no other business or occupation. She hired Bargewell to make repairs on one of the cottages, and while so employed he was injured. Compensation was awarded and defendant appealed, urging the same defense as that put forward by petitioner here. The court said by Cozens-Hardy, M. R.: "I think this appeal must be allowed. . . . The learned county court judge has found here that the work was casual work, and the employment temporary, and of a casual nature. Therefore, the plaintiff was not a workman within the act unless he was employed for the purposes of the employer's trade or business. It is not suggested the defendant was carrying on a trade. Was she carrying on a business in which the plaintiff could be employed? It seems to me she was not. . . . The learned judge appears to have treated her as carrying on the business of a house agent. But section 13 of the act provides that a workman within the act does not include a person whose employment is of a casual nature, and who is employed otherwise than for the purposes of the employer's trade or business. The intention was that the act should not apply in such a case to the ordinary owner of property, who was not carrying on any trade or business. On that short point, it seems to me that this appeal must be allowed."

*Kelly* v. *Buchanan*, 47 Ir. L. T. 228 (cited in Workmen's Compensation Reports [1913], p. 727), was a case very similar in its facts to this. Defendant was a shopkeeper, but he owned certain dwellings adjoining his place of business. These were let to tenants. Plaintiff was hired for some work on one of these houses, and while performing it he was injured. The award of compensation was reversed, the court saying: "The facts are very plain. Here we have a man who carries on the business of a shopkeeper in a house, and at the back there are some houses converted from cow-houses into residences; he brings in a man to repair one of them, and we are asked to say that this casual laborer was employed for the purposes of the employer's trade or business. The decision of the county court judge was wrong, and we must allow the appeal." The same principles are announced in *McCann* v. *McDonnell*, reported in Workmen's Compensation

Reports (1913), under note to *Kelly* v. *Buchanan, supra.* *Rennie* v. *Reid,* 1 B. W. C. C. 324, was the case of a window-cleaner injured by a fall from a physician's residence, in which was also located the office of the medical man. The claimant sought relief upon the theory that he was engaged in his employer's business. Compensation was denied, and on appeal to the house of lords, in discussing this phase of the matter, Lord Stormont Darling said: "I am of the opinion that the appellant was not employed for the purposes of the respondent's business. It was argued that the fact that the appellant cleaned the windows of the rooms in the house used by the respondent in connection with his medical practice was sufficient to satisfy this requirement. I cannot agree with this argument, and, in my opinion, it would be absurd to make the respondent's liability to compensate the appellant turn upon the question whether the appellant had or had not, on the particular occasions on which he went to the house, cleaned the windows of the surgery as well as the other windows of the house. Essentially the employment was in connection with the respondent's private residence, and not for the purposes of his business. On the whole matter, I am of opinion that we should answer the question of law in the negative."

Respondents have cited *Howard* v. *Massachusetts Employers' Ins. Assn.,* reported in 2 Massachusetts Workmen's Compensation Decisions, at page 8. That was a case in which an electric lighting company employed a number of men to trim trees where the branches interfered with the wires by which the electricity was conveyed to customers. Howard, one of these men, was directed by the foreman of the employer corporation to trim some trees in the yard of a church some distance from any of the lines of the lighting company. An award of compensation was granted upon the theory that Howard was acting as an employee of the company; that his work was not casual; and that it was not outside the usual course of the business of his employer. The case is not in point. The workman's regular business, acting for the company, was trimming trees under orders of the foreman, and this was as much a part of the corporation's business as the stringing of wires, the operation of machinery for the production of electric current or any of the other incidents to the safe transmission of electricity to customers. When he

was ordered to work at a distance from the wires, he was not told, and he had no means of knowing, that he was not doing pioneering work preparatory to the stringing of wires for his employer. In the instant case, however, the carpenter knew that he was hired to assist in a mere casual task of repairing, and that his employer, the laundry company, was not in the house-repairing business.

It follows that the award must be annulled, and it is so ordered.

Shaw, J., Sloss, J., Henshaw, J., Lorigan, J., and Angellotti, C. J., concurred.