[Civ. No. 1709.    Third Appellate District.—September 29, 1917.]

## C. T. CARTER, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

WORKMEN'S COMPENSATION ACT—RIGHT TO COMPENSATION—RULE PRIOR TO AMENDMENT OF 1917—INJURY WITHIN USUAL COURSE OF BUSINESS.—Under the Workmen's Compensation, Insurance and Safety Act prior to the amendment of 1917, an employee was not entitled to compensation unless the injury occurred in the *usual* course of business of the employer.

ID.—INJURY WHILE LOADING GRAIN—EMPLOYMENT WITHOUT USUAL COURSE OF BUSINESS OF EMPLOYER.—A purchaser and shipper of grain is not liable to pay compensation under the Workmen's Compensation Act prior to the amendment of 1913, for injuries received by a person casually employed by him to complete the loading of some grain on cars, which the sellers had been unable to load at the time of its delivery at the railroad station owing to a shortage of cars, it being shown that it was the custom for sellers to do the loading and that it was no part of the usual course of the purchaser's business to load the grain.

APPLICATION for a Writ of Review originally made to the District Court of Appeal for the Third Appellate District to annul an award of the Industrial Accident Commission.

The facts are stated in the opinion of the court.

Daly Robnett, for Petitioner.

Christopher M. Bradley, for Respondents.

BURNETT, J.—This case comes up on *certiorari* to review the findings and award of the Industrial Accident Commission in favor of Roy E. Ladd against C. T. Carter. From the return to the writ it appears that Carter was engaged in the business of buying and shipping grain; that he had purchased about sixty carloads of wheat in Modoc County f. o. b. the cars at the nearest railroad station. After the sellers (farmers) had loaded part of the grain, a shortage of cars occurred, necessitating the placing of several loads upon the railroad platform awaiting the arrival of the cars. When the required cars arrived, the farmers, whose duty it was to load the grain, were at their homes, some twelve miles from

the station, and in order to avoid the delay incident to sending for them, Carter employed Ladd for four days to load the grain that was on the platform. It was while loading this that Ladd slipped and broke his knee-cap, for which injury the commission awarded him indemnity against Carter. As a basis for his protest Carter claims that Ladd was not an "employee" within the terms of the Workmen's Compensation, Insurance and Safety Act, since his employment was both casual and not in the usual course of the business or occupation of Carter. Respondents admit that Ladd was a "casual" employee, but insist that "loading grain" was a part of the usual course of the business of Carter. The sole question for determination is, then, whether upon the facts as disclosed by the record "loading grain" was included within the usual course of Carter's business, which was buying and shipping grain.

Respondents claim that as grain cannot be bought and shipped without loading it, loading is an incident of shipping. Though this is quite true, it does not necessarily follow that loading grain was within the usual course of business of Ladd's employer. There is no evidence in the record that such was the case. It does appear, however, that of the sixty carloads, more than fifty-nine and one-half were loaded by the sellers, and both buyers and sellers testified that the general custom in that community was for the sellers to do all loading, and that the buyer had nothing whatever to do with it. The occasion calling for the employment of the applicant was accidental and unforeseen, and, as appears from the custom, wholly excluded from Carter's usual course of business. The argument of respondents might well be carried a step further, to the effect that the hauling of the grain was an incident to the shipping, since only by that means could the grain be brought to the station. Yet had Carter found it necessary in an emergency to cart one or two loads from the ranches some twelve miles distant, we do not believe that it could be correctly said under the facts of this case that carting grain was a part of his usual course of business. No more, then, was the loading.

The decided cases in this state interpreting said provisions of the statute excluding from its operation one who is a casual employee and whose employment is not in the usual course of the business of the employer, when carefully considered, seem

to uphold petitioner's contention herein. They involve different facts, but the principles therein stated are controlling here. It is sufficient to refer to *Maryland Casualty Co.* v. *Pillsbury,* 172 Cal. 748, [158 Pac. 1031] ; *London etc. Accident Co.* v. *Industrial Accident Commission,* 173 Cal. 642, [161 Pac. 2] ; *La Grande Laundry Co.* v. *Pillsbury,* 173 Cal. 777, [161 Pac. 988]. We may repeat that while the loading of the grain was a necessary incident to the shipping and that without said loading the shipping and sale could not be had, yet it is perfectly plain that the loading was not within the usual business of the employer. The employment must come within the normal operations of the usual and ordinary business of the employer in order to make him liable. This usual and ordinary business here did not involve the loading of the grain but embraced simply the purchase and transportation after the grain was loaded upon the cars.

In other words, the applicant was casually employed to do work which was not ordinarily and usually done by or under the direction of the employer in the business in which he was engaged, and if we are to be guided by the language of said act in force at the time of the accident, we must reach the conclusion that the applicant was not entitled to recover. The law, it may be said, was amended by the Statutes of 1917 (page 831), so that no longer is the employment required to be within the *usual* course of the business of the employer, and if such had been the law when this unfortunate occurrence happened, there could be no doubt of the legality of the award, but as the law existed at that time, we see no escape from the conclusion that the award should be annulled, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 24, 1917, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 26, 1917.