**OILMEN'S RECIPROCAL ASS'N v. GILLELAND et al. (No. 747—4689.)**

(Commission of Appeals of Texas, Section B. Feb. 9, 1927.)

Master and servant ☞362—Bricklayer employed by laundry company to wall up pit near wells held not engaged in employer's "usual" business and not "employee" (Workmen's Compensation Act, pt. 4, § 1, par. 3).

Under Workmen's Compensation Act, pt. 4, § 1, par. 3 (Rev. St. 1925, art. 8309), defining employee as person in service of another under contract of hire "except one whose employment is not in the usual course of trade, business, profession or occupation of his employer," a bricklayer employed by a laundry company to wall up a pit near two wells in which pumping equipment was to be installed *held* not an employé, not being engaged in employer's "usual" business, "usual" meaning such as is in common use or occurs in ordinary practice or course of events; customary; ordinary; habitual; common; wonted; regular.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé; Usual.]

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

---

Action by T. J. Gilleland and others against the Oilmen's Reciprocal Association. A judgment for plaintiffs was affirmed by the Court of Civil Appeals (285 S. W. 648), and defendant brings error. Judgments of District Court and Court of Civil Appeals reversed, and judgment rendered for plaintiff in error.

Carrigan, Britain, Morgan & King, of Wichita Falls, for plaintiff in error.

E. W. Napier, of Wichita Falls, for defendants in error.

POWELL, P. J. In stating the nature and result of this case, the Court of Civil Appeals said:

"This case arose under the Workmen's Compensation Law of Texas, and grows out of the fact that Ed Gilleland, the son of the appellee, T. J. Gilleland was killed in an accident on December 23, 1924, while working as an employee of the City Laundry Company, a corporation of Wichita Falls, Tex.

"No question is made upon the pleadings, and the case is before us upon an agreed statement under V. S. C. S. art. 1949 (R. S., 2177).

"Compensation was denied the appellee Gilleland by the Industrial Accident Board, and, joined by his attorney, E. W. Napier, the appellee Gilleland appealed from the ruling of the accident board and sued in the district court of Wichita county, where judgment was rendered for plaintiffs for compensation at the rate of $20 per week for 360 weeks.

"The case is before us upon the single proposition of law, as follows: 'The court erred in rendering judgment for the plaintiffs T. J. Gilleland and E. W. Napier against this defendant, for the reason that, under the undisputed facts presented to the court at the trial of this cause, the deceased, Ed Gilleland, was clearly not an employee within the meaning of the statutes of the state of Texas governing workmen's compensation cases, it appearing from the agreed statement of facts that at the time of the accident resulting in his death, the said Ed Gilleland was employed by City Laundry Company, the insured, as a bricklayer, to wall with brick a pit 16 feet deep, in which his employer was about to install a pump for the purpose of pumping water to its plant where it conducted a laundry business, engaged in the business of cleaning and pressing clothing, garments, and linens for the general public for compensation, from which it clearly appears that the employment of the said Ed Gilleland was not in the usual course of trade, business, profession, or occupation of said employer.'

"The issue for consideration here is whether Ed Gilleland was an employee, under the express term of the policy, as set out in the petition and under the statutes of Texas, defining that relation. Vernon's Ann. Civ. St. 1918, art. 5246—82 (R. S. 1925, art. 8309, § 1, par. 3), define employee, in part, as follows: 'Employé' shall mean every person in the service of another under any contract of hire, express or implied, oral or written, * * * except one whose employment is not in the usual course of trade, business, profession or occupation of his employer.'

"The policy which was issued by the appellant indemnity association to the laundry company was not made a part of the statement of facts. Plaintiffs allege that the laundry company held a policy issued by the defendant 'insuring and indemnifying the said City Laundry Company against liability for injuries to its employees arising in the course of their employment.'

"The only reference to the policy in the statement of facts is in the recital that the City Laundry Company 'held a policy of compensation insurance issued by the defendant, Oilmen's Reciprocal Association, insuring and indemnifying the said City Laundry Company against liability for injuries to its employees arising in the course of their employment, which said policy of insurance was in force on the date last above mentioned.'

"If we apply the rule that the policy is to be strictly construed against the insurer, then the judgment must be affirmed, because, according to the agreed statement of facts, Ed Gilleland, at the time of his death, had been employed by the laundry company to wall up a pit with brick, and while in the course of his employment and as the result of the side of the pit caving in he was buried under the sand and instantly killed. It will be observed that the terms of the policy did not limit the liability of the appellant to injuries suffered by an employee while he was working 'in the usual course of trade, business, profession or occupation of his employer,' as is provided by the statute, but the liability arises under its terms if the injured party is an employee of the assured and is injured in the course of the workmen's employment.

"The case was tried as one arising under the Workmen's Compensation Act, and must be considered upon that theory in this court."

The Court of Civil Appeals summarizes the agreed statement of facts with reference to the death of Gilleland as follows:

"The record discloses that in carrying on its laundry business the assured obtained water from two or three wells operated by a small steam pump; that on account of an increase in the volume of its business the water supply from these wells became inadequate. On this account it caused two additional wells to be sunk, of such depth that it became necessary to install a larger and more powerful pumping equipment. For this purpose it had caused an excavation to be made near the two wells, which was about 16 feet deep, 18 feet long, and 6 feet wide; that to prevent the walls of the excavation from caving, it was necessary to line it with brick. Ed Gilleland was a bricklayer, and, at the time he was killed, had been employed by the laundry company, with other workmen, to build the brick wall. While engaged in lining the excavation with brick, one side caved in and buried the workmen under several tons of earth, causing Gilleland's immediate death."

The Court of Civil Appeals affirmed the judgment of the district court. See 285 S. W. 648. That action was taken upon two

grounds. In the first place, it was held that, in view of the wording of the policy of insurance as stated in the agreed statement of facts, the policy went beyond the law and did not require that the employee be engaged in the usual course of the employer's business. In the second place, the court indicated clearly that, if necessary, it would hold that this man was in the usual course of the laundry business when killed, and that, under the law, there was liability.

Upon this first point, it was shown upon motion for rehearing filed by appellant in the Court of Civil Appeals that the attorneys making up the agreed statement of facts had no intention to convey to the court the idea that the policy went beyond the provisions of the Compensation Act. And counsel for appellees in that court, in answering the motion for rehearing, said:

"Now come the appellees herein and by way of reply to the appellant's motion for rehearing respectfully say that it was not the intention of the parties to enlarge the scope of the term 'employee' beyond that intended by the definition of that term as contained in the Employer's Liability Act, and the language used in the agreed state of facts, which is quoted by the court in its opinion in this case, and being as follows: 'Insuring and indemnifying the said City Laundry Company against liability for injuries to its employees arising in the course of their employment' was inadvertently used by the parties without any intention of giving it the significance which the court has given it in the opinion herein rendered."

However, the Court of Civil Appeals overruled the motion for rehearing. In doing so, no opinion was written. But we cannot believe that court intended to override the last quotation, which showed the real agreement as to the statement of facts. Therefore we must assume that the Court of Civil Appeals intended, in the end, to base its affirmance of the judgment upon the second theory above mentioned by us. At the same time, even if we be mistaken in this assumption, then we are of the view that it is only reasonable to assume that lawyers, in agreeing to facts in a case of this kind, used words with reference to the Compensation Act. And, under this theory, we reach the conclusion that the word "employee" was used with reference to what constitutes one an employee under the terms of the law. Therefore we now come to a consideration of the holding by the Court of Civil Appeals that Gilleland, when killed, was in the usual course of his employer's business. This is the one and only question in this case, as shown by the briefs of all the attorneys.

The Court of Civil Appeals in this case, in giving a history of the clause in the statute now under consideration, speaks as follows:

"The Workmen's Compensation Act of Texas seems to have been fashioned very largely after the Massachusetts act. The original act in Massachusetts * * * in defining employee, excepted 'one whose employment is but casual or is not in the usual course of trade, business, profession or occupation of his employer.' This definition was adopted when the Texas law was enacted. Vernon's Sayles' Civil Statutes, art. 5246yyy. Later, after the Massachusetts law had been amended * * * eliminating the words 'but casual or is,' the Texas act in 1917 * * * was also amended so as to conform in this particular with the Massachusetts amendment. Vernon's Civil Statutes 1918, art. 5246—82. The effect of this amendment was to broaden and liberalize the scope of the act with reference to who should be classed as employees, and, as amended, one who is only casually employed is entitled to the benefits of the act if he is injured while in the usual course of the trade, business, profession, or occupation of his employer. R. S. art. 8309, § 1."

We quite agree with the aforesaid quotation and think the conclusion reached is correct. We did follow the course of the Massachusetts statute, as certain other states did. On the other hand, in many states, Indiana among them, in order for a person not to be an employee under the Compensation Act, his employment must be "both casual and not in the usual course of the trade, business, occupation or profession of the employer." In this last group of states, a mere casual or occasional employee was within the act if his duties were in line with the usual course of the employer's business. After the Massachusetts and Texas acts were amended, as shown by the Court of Civil Appeals herein, the same rule obtained in those states. Before the amendment in those states as just mentioned, it would have been impossible for one of the girls employed one day only in the laundry as a worker to come within the act. This is clearly held by the Supreme Court of Massachusetts, in construing the original act in that state in Gaynor's Case, 217 Mass. 86, 104 N. E. 339, L. R. A. 1916A, 363. Chief Justice Rugg stated, in that case, that the employment was for "a single day and for one occasion only" and therefore "but casual." In denying compensation in that case, the learned Chief Justice said:

"It was in the course of the regular business of the employer. But under our act that is an immaterial circumstance in view of the other fact that the employment was 'but casual.'"

It must be assumed that the Texas Legislature made this amendment advisedly. It did liberalize the rule as already shown. But it still left in the statute the word "usual" in defining the course of the employer's business. The Legislature did not say that every one was an employee, within the act, who was employed in the "course" of the employer's business. Therefore it becomes

very material to determine what is meant by the "usual course" of the employer's business.

Upon this point, as stated by the Court of Civil Appeals, there is a sharp conflict of authority. As sustaining its construction of this clause, plaintiff in error cites, among others, the following cases: Holbrook v. Olymphia Hotel Co., 200 Mich. 597, 166 N. W. 876; Packett v. Moretown Creamery Co., 91 Vt. 97, 99 A. 638, L. R. A. 1918F, 173; Oliphant v. Hawkinson, 192 Iowa, 1259, 183 N. W. 805, 33 A. L. R. 1433; Callihan v. Montgomery, 272 Pa. 56, 115 A. 889.

On the other hand, defendants in error seem to rely mainly upon Caca v. Woodruff, 70 Ind. App. 93, 123 N. E. 120; Gross & Bros. Co. v. Industrial Commission of Wisconsin, 167 Wis. 612, 167 N. W. 809; Utah Copper Co. v. Industrial Commission, 57 Utah, 118, 193 P. 24, 13 A. L. R. 1367.

This is a question of first impression in our own Supreme Court. We think the better reasoning is with the authorities cited by plaintiff in error and that it cannot be said that walling up this pit with brick was in the usual course of the laundry business. It is necessary, of course, that a laundry continuously and constantly have water. And a man employed to pump water to the laundry and thereby furnish this necessity, from day to day, would unquestionably be within the "usual course" of the laundry business. He would be just as would the machinist who looks after the boiler and furnishes steam power to the plant from day to day. Or just as would the girls who actually do the washing or the boys who gather up the laundry and return it to the customers. But it seems inconceivable to us that it could reasonably be said that a bricklayer, working in connection with the digging of a new well, an incident most unusual and rare, was in the usual course of the laundry's business. In other words, laundries do not ordinarily engage in building brick walls in pits. During a great majority of the days of its operations, it engages in no such business. Therefore such an undertaking is not ordinary or customary, but exceedingly unusual and extraordinary.

The case of Callihan v. Montgomery, 272 Pa. 56, 115 A. 889, by the Supreme Court of Pennsylvania, is most interesting. In that case, a skilled mechanic had been engaged to repair an engine to run a pump under an agreement to be paid by the day. In doing so he was killed. The employer was in the business of producing oil. We quote from the court's opinion as follows:

"The casual employment of one, for the performance of an odd job, may occur in conducting a business and still not be within its regular course. For instance, emergency repair work on a machine used in the operation of a business can always be said to take place in the course of that business, as all machinery, at some time or other, is bound to need repair; but such work, if not of a kind usually performed by or under the control of the person conducting the business, would be outside the regular course thereof. The Legislature evidently intended, by the use of the words 'regular course,' to give them some definite significance, and the most natural meaning is that they refer to the normal operations which regularly constitute the business in question, excluding incidental or occasional operations arising out of the transaction of that business, such as now and again repairing the premises, appliances or machinery used therein. While repair work may be considered an important incident to any business using machinery, and, in some cases, may enter into the customary operation of such a business (for example, when men are engaged as regular employees for the purpose of keeping the machinery in order), yet the repairs we are here considering were no part of the regular course of the business conducted by defendant, which is producing oil; they represent merely an odd job, incidental to that business, but not part of the work ordinarily done by or under the control of the employer in this particular case. On the other hand, such repairs might well be classed as within the regular course of the business of plaintiff's deceased husband.

"As the employment of deceased to repair the machine in question was casual and not in the regular course of the business of defendant, his widow is not protected by the Pennsylvania act."

The above cause reviews many other decisions in harmony with its own holding.

Michigan has the same "usual course" clause which we have. In the case of Holbrook v. Hotel Co., 200 Mich. 597, 166 N. W. 876, a workman engaged in painting and decorating rooms of a hotel was injured. Compensation was denied him. The Supreme Court of that state, in that case, spoke as follows:

"It is clear that the law contemplates that there may be an employment of labor, not in the usual course of the business of the employer, in which employment the risks of injury not occasioned by the employer's fault are assumed by the workman. It would seem that occasionally renovating the rooms of a building, or the building itself, owned and occupied by the owner as a home, with paint or paper or both, is not in the usual course of the trade, business, profession or occupation of the owner, unless he is himself in the business of painting and decorating. No reason can be found for concluding that the owner of a hotel is pursuing his business, within the meaning of the law, when he causes the rooms to be occasionally painted and decorated, although it is usual to have work of that nature done from time to time."

Having given the real gist of the cases sustaining plaintiff in error, we now quote from an Indiana case which sustains the defendants in error. We refer to the case of Caca v. Woodruff, 70 Ind. App. 93, 123 N. E.

120. In Indiana a workman is an employee, within the act, unless he be both casual and not in the usual course of the employer's business. The claimant in the Caca Case was a carpenter who was employed to assist in erecting an additional room to a mill where wheat and corn were ground and feed stuffs manufactured. He was injured, and the Appellate Court of Indiana, division No. 2, affirmed an award of compensation. That court said:

"The appellant was engaged in the milling business, the proper conduct of which required a building and machinery. Buildings and machinery used in such a business at times need to have additions and repairs made thereto. These additions and repairs must be expected and provided for. They are necessary in any business such as that in which appellant is engaged. The making of repairs was a necessary part of his business which he was required to anticipate when the necessity of his business demanded, or his convenience dictated."

The above quotation is representative of the views of those courts sustaining an award like the one in the instant case. Under a holding of this kind, any employment which would be helpful or essential to a business, however infrequently such necessity might arise, would be compensable. With all due deference to the courts upholding this view, we do not think an occasional situation is one arising in the "usual course" of a business. Practically every employment is for a purpose essential to the business of the employer. Otherwise, no such employment would exist. Consequently, such a construction practically eliminates this word "usual" from the statute. This should not be done by the courts. We think, in a few of the states, the courts themselves, by judicial construction, have done what the Supreme Court of California refused to do. The history of this matter in that state is quite interesting. It is given in the brief filed in the Court of Civil Appeals by plaintiff in error as follows:

"A review of the California decisions would illustrate the contention of appellant that the use of the word 'usual' puts a very different meaning on the definition of the employee than if it were omitted. At the time that court decided Maryland Casualty Co. v. Pillsbury, 172 Cal. 748, 158 P. 1031; London, etc., Co. v. Ind. Acc. Com. [173 Cal. 642] 161 P. 2; Le Grande Laundry Co. v. Pillsbury [173 Cal. 777] 161 P. 968 [988]; and Carter v. Ind. Acc. Com. [34 Cal. App. 739], 168 P. 1065, which cases were referred to in the Pennsylvania case discussed above, the statute provided that the employee must sustain his injury in the usual course of employment. In all of these cases the contention of appellant is sustained, as shown by the quotation taken from the Pennsylvania case above referred to. Then the Legislature of California amended the act so as to omit the word 'usual,' leaving it read that the injury must be received in the course of the employee's employment. Immediately the court put a different construction upon the statute and held in Globe Ind. Co. v. Ind. Acc. Com. [45 Cal. App. 328] 187 P. 452, that a carpenter employed by a partnership to build a silo on its dairy farm, who died from a fracture of the skull caused by the falling of a scaffold, was in the course of the business of the employer at the time of his death."

It is our view that the California court adopted the proper policy and refused to ignore this word "usual" or give to it any unusual meaning. The ordinary meaning of the word "usual" is given by Webster's New International Dictionary as follows: "Such as is in common use; such as occurs in ordinary practice, or in the ordinary course of events; customary; ordinary, habitual; common."

The same dictionary tells us that the word is synonymous with "accustomed, common, wonted, ordinary, regular." It goes without saying that walling up a pit with brick is not in the ordinary course of the laundry business.

In one word, it is clear that Gilleland was a bricklayer. Therefore he was unquestionably engaged in the usual course of his own business when killed. But, it is equally clear that he was not, in any sense, in the usual course of his employer's business at that time.

Under our construction of this statute, defendants in error are not entirely without remedy. While the injured was not within the act, his beneficiaries still have their right to sue as at common law, if the employer be guilty of negligence. Of course, we express no opinion whatever upon the latter point.

For the reasons stated by us, we recommend that the judgments of the district court and Court of Civil Appeals be reversed and judgment be rendered by the Supreme Court in favor of the plaintiff in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error.