he bought the gas and rode with the lady to Abilene.

The appellant introduced several witnesses who testified that they saw a Ford roadster on the morning of the robbery about the time of morning and going in the same direction as that testified to by the state's witnesses. They testified positively that they saw who was in the Ford roadster and appellant was not one of the three persons in said car.

The witness J. H. Buse testified that he lived six miles south of Bangs, Tex., in Brown county, Tex., and he saw the appellant on the morning of January 6, 1930, at his place of business about six miles south of Bangs; that at that time he was traveling in a big car and he bought some gas from him; that it was early in the morning around sunup. There was a lady with appellant and there was no other man in the car, and the car had an Oklahoma license on it; that he knew it was on Monday, January 6, 1930, because it was on that day that he heard about the bank being robbed; that after he had put the gas in the car the appellant drove off with the lady, going north.

The evidence shows that the appellant was afterwards arrested in California and came back with the officers without any objection; that he did not resist extradition or demand any extradition papers at all; and that he signed a waiver.

 Other than the facts stated and the further fact that the appellant was associated with his brothers and Woods prior to the robbery, we have nothing in the testimony tending to show that appellant was connected as a principal with the commission of the offense. The state in this case relied for conviction alone on circumstantial evidence, and the trial court so charged the jury. Appellant contends that the evidence was insufficient to support a conviction. A conviction on circumstantial evidence cannot be sustained unless the circumstances proven exclude every other reasonable hypothesis except that of the guilt of the accused. Proof that only amounts to strong suspicion or mere probability is not sufficient to support a conviction. Branch's Ann. P. C. § 1877; Hernandez v. State (Tex. Cr. App.) 72 S. W. 840. There must be evidence overcoming the presumption of innocence and excluding every other reasonable hypothesis except the guilt of defendant. Branch's Ann. P. C. § 1877; Hernandez v. State, supra; Pogue v. State, 12 Tex. App. 283; Hogan v. State, 13 Tex. App. 319; Clifton v. State, 39 Tex. Cr. R. 619, 47 S. W. 642. This, we think, the evidence fails to do.

The judgment is reversed, and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

### INDEMNITY INS. CO. OF NORTH AMERICA v. HARRIS.

### No. 2274.

Court of Civil Appeals of Texas. Beaumont.
Nov. 2, 1932.

Rehearing Denied Nov. 2, 1932.

Barnes & Barnes, of Beaumont, for appellant.

F. S. Jones and W. J. Brown, both of Beaumont, for appellee.

WALKER, C. J.

This suit was filed by appellee, Johnnie Harris, against appellant, Indemnity Insurance Company of North America, in the district court of Jefferson county, Fifty-Eighth judicial district, as an appeal from an adverse award of the Industrial Accident Board. By the allegations of his petition appellee was the employee, the Gulf Refining Company the employer, and appellant the insurer; on or about the 13th day of September, 1930, while in the course of his employment with Gulf Refining Company, he suffered serious accidental injuries resulting in his total permanent incapacity; the necessary facts to give jurisdiction to the Industrial Accident Board and to the district court were duly alleged. The prayer was for compensation at the rate of $15.45 per week for 401 weeks from the 14th day of September, 1930, with a lump-sum settlement, or such other relief both as to average weekly wage and duration of disability as might find reasonable support in the facts. The answer of appellant was by general and special demurrers, plea of not guilty, general denial, etc. The jury found that appellee, on September 13, 1930, while in the course of his employment with the Gulf Refining Company, suffered an accidental injury which resulted in his total incapacity for the period of 285 weeks; that the injury thus received by him "was the producing cause" of his incapacity; and that defendant and Gulf Refining Company had actual notice of appellee's injury "within thirty days after the happening thereof." The jury also fixed appellee's average weekly wage and found that he was entitled to a lump-sum settlement. On the verdict of the jury judgment was entered in appellee's favor for 285 weeks on the basis of an average weekly wage of $12.738.

## Opinion.

■ There is no merit in the contention that appellee failed to raise the issue "that the work at which he was engaged at the time of the alleged injury constituted employment in the usual course of trade, business or occupation of his employer, the Gulf Refining Company." The evidence showed that appellee had been employed by the Gulf Refining Company in its Port Arthur refining plant for about three years. From August 8, 1929, until August, 1930, he was employed as a common laborer "rolling a wheel barrow" carrying cement, gravel, and sand from place to place in the refinery. On August 30th he was transferred from that job to "coke rolling" at No. 17 Boiler House. Appellee described this work as follows:.

"Q. Describe to the jury what you mean by a coke roller; just tell the jury what you did with reference to rolling coke? A. It was an iron cart, iron buggy, with two wheels on it, and you had to fill it up with coke; you had to go out to the boxes and get it and then push it back to the boiler house and put it in the boiler with a scoop.

"Q. Firing a boiler with coke? A. Yes sir.

"Q. You say you had to go out to the boxes; what do you mean by boxes? A. It was just big loading boxes made and they run it in there and when it dried, that was where they keep it at. .

"Q. What did you do with reference to the boxes? A. When they put it in there, it come by pipe and it was nothing but oil, oil and coke, and they put it in them boxes and they would let the oil drain out, of course, and then you could load it in the buggy and carry it to the boiler."

He continued on this job until the date of his injury on the 13th of September, 1930. His injuries were received in the following manner, as testified to by him:

"Q. Now, the day that you say you were pulling a coke buggy, I'll ask you to state what happened to you; I'll ask you to state were you doing this work—who were you doing it for? A. The Gulf Refining Co.

"Q. All right. Now, when you were doing this work for the Gulf Refining Co. did anything happen to you? A. I got injured.

"Q. You got injured? A. Yes sir.

"Q. All right; what were you doing when you got injured? A. I was rolling coke.

"Q. What were you doing with reference to this buggy? A. I was in the coke box, and I just got the buggy loaded with coke; and I got my buggy loaded and started out and the heel of my shoe, the wooden bottom of the shoe was worn slick, and when I got my buggy loaded, I put my left foot in front and my left foot slipped out from under me.

"Q. Did you fall? A. Yes sir.

"Q. Where did you strike yourself? A. Right on this hip here (indicating)."

This statement shows that appellee, at the time he was injured, was not only engaged "in or about the furtherance of the employer's affairs or business," but that "his injury was of such kind and character as had to do with and originated in the employer's work, trade, business, or profession" within the strict letter of the rule announced by the Commission of Appeals in Ætna Life Ins. Co. v. Burnett, 283 S. W. 783, 784. The employer was operating its boiler house at No. 17, and for more than a year appellee had been "rolling coke" to stoke these boilers. On these facts it cannot be questioned that he was engaged "in the usual course of his employer's business" at the time of his injury, as that term was defined by the Commission of Appeals in Oilmen's Reciprocal Ass'n v. Gilleland, 291 S. W. 197.

■■ Before the Industrial Accident Board appellee based his claim on "an injury to my spine and leg injury." By his petition herein, in addition to the injury claimed before the board, he also claimed "an injury to the sacroiliac joint." On the ground that the Industrial Accident Board was not called upon to adjudicate an injury to the "sacroiliac joint," appellant insists that appellee was not entitled to plead nor offer evidence to the jury of this additional injury. This contention is overruled. Appellee's injury belonged to that class of compensable injuries where the amount of compensation is based upon incapacity to work or labor resulting therefrom, and did not fall within the class of specific injuries where the amount of compensation is based upon the nature of the injury. For the class of injuries of the nature involved in this case a general description such as made by appellee in his claim before the Industrial Accident Board is sufficient, and upon appeal to the courts may be enlarged to include all injuries proximately resulting from the accident complained of. Texas Employers' Ins. Co. v. Knouff (Tex. Civ. App.) 271 S. W. 633, and authorities therein cited; Texas Indemnity Ins. Co. v. Wilson (Tex. Civ. App.) 281 S. W. 289; Texas Employers' Ins. Ass'n v. Perry (Tex. Civ. App.) 35 S.W.(2d) 1087. On authority of Oilmen's Reciprocal Ass'n v. Gilleland, supra, and similar cases, we agree with appellant that the phrase "in the usual course of trade," etc., as used by the court in its charge, has a technical meaning in our jurisprudence not commonly understood by laymen. In the case cited the court spent much work in defining this phrase and many other authorities might be cited discussing its meaning. But in the case before us the court did not commit reversible error in refusing to submit a definition of this phrase as a part of the charge to the jury. This is so because, under all the evidence, without a

scintilla of evidence to the contrary, it was shown that appellee was injured, if injured at all, in the usual course of his employer's business.

We overrule the contention that the overwhelming preponderance of the evidence was contrary to the finding that appellee had suffered total incapacity for a period of 285 weeks. This issue was raised by appellee's own testimony, by the testimony of Dr. Bailey, of appellee's wife, and of one or more other witnesses who testified as to appellee's physical condition before his injury, that it was good, and that since his injury he had not been able to work.

■ Appellant complains that the following issue was duplicitous: "Do you find that such injury, if any, of plaintiff was sustained in the course of his employment as an employee of the Gulf Refining Company?" This point we do not determine. Every element of this question appeared as a matter of law in favor of appellee and, therefore, appellant could not have been injured by its duplicity.

■ On cross-examination we think it was error for the court to exclude from the jury appellee's evidence to the effect that in addition to his demand for compensation in this case, upon his claim of total permanent incapacity, he also held accident insurance policies for the amount of $100 per month, payable to him only upon the contention that he had suffered, and was able to support his contention of, total permanent incapacity as a proximate result of the injuries sued for herein. Whether or not appellee was suffering total incapacity, and the extent of his incapacity, and whether or not he had entirely recovered, were sharply contested issues. Appellee's claim of total incapacity rested, to a great extent, upon subjective symptoms that had no support except in his own testimony. The fact that he had substantial claims against two accident insurance companies, resting upon his claim of total incapacity as asserted in this case, went to his credibility as a witness and was a proper matter for consideration by the jury.

■ We think the following argument by counsel for appellee constitutes reversible error:

(a) "When I think of the conditions under which this Compensation Law was passed, and what it was passed to remedy, it is really amusing to watch one of these insurance lawyers and the artful and craftiness that they will resort to to try to hoodwink twelve honest men."

(b) "What was the purpose of the law? To try to help compensate this man without bringing him here to the courthouse to fight for his rights, and make this foreign insurance company pay him what he justly deserves. And I hope some day I shall see the flag raised in Texas by some attorney general that will say to these foreign insurance companies—when a man comes into this court and has to fight, as some have to fight for the things that we intended that he should not have to fight for, that you must do your business beyond the state line."

(c) "Now you take the man that pays the bills; you take the contractor, for instance; he pays a premium for what? He pays a premium to protect him and to protect the man that is working in the sweat of his brow to earn his daily bread, for the insurance company to assume the responsibility, and then what do they do? Misfortune comes, a man is hurt. They go and hire them a high-powered lawyer like Mr. Barnes; and the first thing they do, they sent him up to the insurance company's doctor."

(d) "Gentlemen, who knows by whom that stool pigeon was sent and for what motive? It may be to seal Dr. Bailey's lips in testifying for injured individuals."

(e) "Did they ever bring a man in here with all their power, with all their resources, have they ever produced a man that lived within a block or seven blocks, or come in contact with Johnnie Harris in Port Arthur to say that Johnnie Harris isn't injured and maimed, a man who associates with him every day? Not a word. They depend on their insurance company doctors, because they know they can't get that proof."

(a) The criticism of appellant's lawyer, in the first part of this argument, was unwarranted and was without support in the record. There was nothing in the record to show that appellant's lawyer had been guilty of artful and crafty practice "and had tried to hoodwink twelve honest men." (b) That appellant was a foreign insurance company had nothing to do with the merits of the case, and it was improper argument to suggest to the jury that a day might come when the Attorney General would fight to exclude foreign insurance companies and to drive them beyond the state lines, merely because appellant was seeking to have its rights orderly adjudicated by the courts. (c) It was also improper argument to suggest that "the contractor" pays the insurance premiums and, having given his business to an insurance company, that the insurance company did not have the right to employ a lawyer to represent it. (d) We find nothing in the record suggesting that any one had sent a stool pigeon to Dr. Bailey to seal his lips and to prevent him from testifying "for injured individuals." (e) Argument under paragraph (2) was erroneous within many of our decisions. It was improper to call the jury's attention to the fact that appellant "with all their resources" had not been able to produce a witness that lived within a block of appellee to say that he had not been injured. Floyd v. Fidelity Union Casualty Co.

(Tex. Com. App.) 39 S.W.(2d) 1091; Texas & St. Louis R. Co. v. Jarrell, 60 Tex. 267; Western Ind. Co. v. MacKechnie (Tex. Civ. App.) 214 S. W. 456; Texas Ind. Ins. Co. v. Carson (Tex. Civ. App.) 21 S.W.(2d) 691; Vogt v. Guidry (Tex. Civ. App.) 229 S. W. 656; Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W.(2d) 435; Home Life & Accident Co. v. Jordan (Tex. Civ. App.) 231 S. W. 802, Points 5 and 6; Nicholson v. Nicholson (Tex. Civ. App.) 22 S.W.(2d) 514, Points 5, 6 and 7; Commercial Standard Ins. Co. v. McGee (Tex. Civ. App.) 40 S.W.(2d) 1105, 1110, Point 11; Orchin v. Fort Worth Poultry & Egg Co. (Tex. Civ. App.) 43 S.W.(2d) 308, Points 8 and 9; Dallas Railway & Terminal Co. v. Smith (Tex. Civ. App.) 42 S.W.(2d) 794, Points 2 and 3; Robbins v. Wynne (Tex. Com. App.) 44 S. W.(2d) 946, Points 1 and 2; and Panhandle & S. F. Ry. Co. v. Sedberry (Tex. Civ. App.) 46 S. W.(2d) 719, Point 6.

For the reasons stated the judgment of the lower court is reversed, and the cause remanded for a new trial.