## MARYLAND CASUALTY CO. v. WILLIAMS.

### No. 1094.

Court of Civil Appeals of Texas. Waco.
March 3, 1932.

Rehearing Denied April 7, 1932.

Robertson, Robertson & Payne, of Dallas, for appellant.

Read, Lowrance & Bates, of Dallas, for appellee.

GALLAGHER, C. J.

This suit was instituted by appellant, Maryland Casualty Company, against appellee, Mrs. B. H. Williams, to set aside a final order of the Industrial Accident Board awarding her compensation for the death of her husband, B. H. Williams. The Coca-Cola Bottling Company, a corporation, was the employer. B. H. Williams was its employee, and appellant was its insurance carrier. The jury, in response to a peremptory instruction from the court, returned a verdict against appellant in favor of appellee for $7,200, of which sum $1,920 was found to be then due and the remainder to become due at the rate of $20 per month from that date. From a judgment duly entered in accordance with such verdict this appeal is prosecuted.

Opinion.

Appellant presents assignments of error complaining of the action of the court in instructing a verdict against it, and also of the refusal of the court to instruct a verdict in its favor. Appellant contends in this connection that appellee's husband, B. H. Williams, hereinafter called the deceased, was not at the time he received the injuries resulting in his death employed in the usual course of the trade, business, profession, or occupation of his employer, and was therefore not its employee, within the limited definition of that term embraced in the Workmen's Compensation Act. Said act provides that "'employee' shall mean every person, in the service of another under any contract of hire, expressed or implied, oral or written * * * except one whose employment is not in the usual course of trade, business, profession or occupation of his employer." Rev. St. 1925, art. 8309, § 1. The Coca-Cola Bottling Company, at the time deceased received his injuries, had its principal office in the city of Dallas, which was its headquarters for a large surrounding territory. It kept constantly employed in its work there a force of carpenters, never less than two and sometimes four or more. Said carpenters were required to install and maintain all renewals, replacements, and additions in or about its Dallas building or any building in which it was interested. They were also required to make and maintain all needed signs, bottle racks, ice boxes, truck bodies, and all other wooden work used in its Dallas plant or the territory controlled therefrom. Refrigeration was a necessary part of the business of the company. When repairs, extensions, or replacements were needed, the work was done by the company's regular employees. Refrigerating plants or units seem to have been

durable, and the entire renewal or replacement thereof required only at long intervals. Only three complete separate units had been installed in the Dallas building in about twenty-five years, but recently one had been enlarged by the addition of another compressor. In addition to the refrigerating machinery in the Dallas building, the company maintained eight other refrigerating units in its plants in the surrounding territory. One of the regular employees of its Dallas plant was in charge of the maintenance and replacement of all said units. Wood work for all such units was done from time to time at the Dallas plant by its regular force of carpenters. Shortly before the deceased received his injuries the company decided to replace a refrigerating unit in its Dallas building with a new one. The continued use of the old unit until the new was completed was necessary to enable the company to carry on its usual business. The new unit was located in a different part of the building from the old. The description of the same is very vague. The testimony shows that it consisted principally of an iron tank, which was surrounded by wooden construction to confine and keep in place insulating material. The entire unit was 20 feet long, 5 feet wide, and 5 feet high. It had a capacity of 30 tons and cost approximately $10,000. No further description of this unit is disclosed. The installation thereof was supervised by an expert from the factory, but the entire work was done by the regular employees of the company at its Dallas plant. The deceased had been employed by the company as a member of its regular force of carpenters about two weeks before the accident. His specific occupation during that time is not disclosed. While nailing siding on the wooden frame surrounding the tank, he fell and struck his head on the concrete floor. Death resulted from the injuries received in such fall. The company held a workmen's compensation insurance policy issued by appellant covering its business at its Dallas plant.

■ Whether the employment of a workman injured while engaged in a particular task is in the usual course of the business or occupation of his employer is ordinarily a question of fact. To make such issue a question of law, the testimony must, not only be uncontradicted, but must be so conclusive that reasonable minds cannot differ as to its effect. When the ultimate fact to be ascertained is not shown by direct testimony, but is to be inferred in whole or in part from other circumstances in evidence, a jury question is presented. Stooksbury v. Swan, 85 Tex. 563, 573, 22 S. W. 963; Supreme Council v. Anderson, 61 Tex. 296, 301; Texas Life Ins. Co. v. Legg (Tex. Civ. App.) 229 S. W. 587, 588; Early-Foster Co. v. W. F. Klump & Co. (Tex. Civ. App.) 229 S. W. 1015, 1023; North v. North (Tex. Civ. App.) 2 S.W.(2d) 481, 484, par. 7; City of Waco v. Branch (Tex. Civ. App.) 8 S.W.(2d) 271, 276, par. 10; Jester v. Lancaster (Tex. Civ. App.) 266 S. W. 1103, 1106. The testimony above recited tended to show that the scope of the employment of the deceased included carpenter work of every description arising in the Dallas plant, and, as a part thereof, the carpenter work required in installing replacement equipment, such as the refrigerating unit in question. The testimony also tended to show that such employment was in the usual course of the business or occupation of the bottling company, but it was not of such conclusive nature as to make the issue one of law. The facts bearing on the issue are doubtless susceptible of fuller and more satisfactory development on another trial. The case of Oilmen's Reciprocal Ass'n v. Gilleland (Tex. Com. App.) 291 S. W. 197, cited and relied on by appellant, was decided on agreed facts, and therefore no jury issue was involved. In the case of Texas Employers' Insurance Ass'n v. Sewell (Tex. Civ. App.) 32 S.W.(2d) 262, cited and relied on by appellant, the employer was the Mexia Textile Mills, and it was engaged in the business and occupation of making textile products. Sewell, when he received his injuries, was not engaged in any task usually incident to the business of manufacturing textile products. He was not a regular employee of the mills, but was engaged under a special contract to paint certain houses being erected by the mills for occupancy by its employees. The facts were uncontroverted and showed conclusively that his employment was not in the course of the manufacture of textile products. See, in this connection, Constitution Indemnity Co. v. Shytles (C. C. A.) 47 F.(2d) 441, where the action of the trial court in refusing a peremptory instruction for the insurance carrier was affirmed. See, also, Commercial Casualty Insurance Co. v. Strawn (Tex. Civ. App.) 44 S.W.(2d) 805, 806, par. 1. The court properly refused appellant's request for a peremptory instruction, but erred in giving a peremptory instruction for appellee.

■ Appellant presents assignments of error in which it contends that the testimony is wholly insufficient to show the average weekly wage of the deceased, such showing being a necessary basis for the award of any compensation. The only competent testimony before the court on such issue was the statement that the deceased had been at work for the company about two weeks, and that he was being paid $6 a day for eight hours' work. Such testimony was wholly insufficient to form a basis for determining the average weekly wage of the deceased. Texas Employers' Ins. Ass'n v. Fitzgerald (Tex. Com. App.) 296 S. W. 509, 510, par. 1; Employers' Liability Assurance Corporation v. Butler (Tex. Civ. App.) 20 S.W.(2d) 209, 211, pars.

2 and 3; Commercial Standard Ins. Co. v. Carr. (Tex. Civ. App.) 22 S.W.(2d) 1101, 1103, par. 2.

The judgment of the trial court is reversed, and the cause remanded.