## CROSWELL v. COMMERCIAL STANDARD INS. CO.

### No. 2298.

Court of Civil Appeals of Texas. Beaumont.
Jan. 4, 1933.

Rehearing Denied March 8, 1933.

Jas. A. Harrison and Tom C. Stephenson, both of Beaumont, for appellant.

Barnes & Barnes, of Beaumont, and Henry Strasburger, of Dallas, for appellee.

O'QUINN, Justice.

This suit was instituted by appellant, W. J. Croswell, against appellee, Commercial Standard Insurance Company, to set aside an order of the Industrial Accident Board refusing him compensation for an injury alleged to have been received while in the course of his employment as an employee of Pig Stands Company, Inc.

Appellant's petition contained the usual and necessary allegations to state a cause of action of the character involved. Appellee answered by general demurrer, general denial, and specially denied that it ever issued a policy of insurance that was in effect at the time appellant received his injury which covered work such as appellant was engaged in doing at the time of his alleged injury. However, appellee admitted it had issued a policy to Pig Stands Company, Inc., but that said policy did not cover employees of said company engaged in such work as appellant alleged he was performing at the time he received his injury, and further specially answered that there was an indorsement or rider placed on said policy after appellant suffered his injury, which said indorsement was placed on said policy at the instance and request of Pig Stands Company, Inc., in an effort on its part to cover employees performing the kind of work appellant was doing at the time of his injury, and specially denied that the policy as originally issued covered appellant, and further denied that the indorsement or rider attached to the policy after appellant was injured in any way protected or covered appellant at the time of his injury.

The case was tried to a jury, but at the completion of the evidence, the court, on motion of appellee, instructed the jury to return a verdict for appellee, which they did, and judgment was accordingly rendered. Motion for a new trial was overruled, and appellant brings this appeal.

■ There is but one assignment of error, which, in substance, is that the court erred in instructing a verdict for appellee, because whether appellant, Croswell, when injured, was employed in the usual course of trade, business, or occupation of his employer, was a question of fact to be determined by the jury and not by the court.

Pig Stands Company, Inc., is a corporation, and the business for which it was created is disclosed in its charter as follows: "That this corporation is created for the purpose of conducting a manufacturing business, to-wit, baking, roasting, curing and converting raw meats into edible and table products, and the purchase and sale of such products, goods and merchandise as are used for such a business, and the sale of such manufactured products."

Pig Stands Company, Inc., carried with appellee a policy of insurance in compliance with the Workmen's Compensation Act (Rev. St. 1925, art. 8306 et seq., as amended). Said policy classified the operations and employees of said company covered by the policy, as:

"Restaurants—including musicians and entertainers, and clerical office force—

"Salesmen (outside) collectors or messengers—

"Chauffeurs and their helpers, Commercial, including incidental garage employees—if not included in division 1."

The Pig Stands Company, Inc., operated stands at several different places in the state. It is stated that there were some twenty-six of them. In April, 1931, the company, desiring to open a stand in the city of Beaumont, began the construction of a stand or structure for the carrying on of its business, under the supervision of H. E. Kimery. Kimery was an employee of the company, and was known as "superintendent of construction." He was not on the regular pay roll of the company—was not paid a regular salary, but was paid by the day. He had authority to employ workmen, carpenters, and such other workers as was necessary, to construct, under his supervision, the stands at or in which the company business was to be carried on. The company paid the workers. The work of erecting a stand in Beaumont was in progress and appellant was one of the men employed by Kimery, and on April 29, 1931, while performing carpenter work on this job, he was injured. He filed his claim for compensation with the Industrial Accident Board, and being dissatisfied with its award, brought this suit to set aside said award and to recover compensation. The company did not erect all of the stands or structures in which it did business, but would rent, remodel, and build stands, as the exigencies of the situation demanded. The record shows that of the twenty-six stands operated, they had built ten—seven in 1929, two in 1930 and one in 1931. Kimery superintended the erection of all of these. He had been with the company, at irregular intervals, for three years, but at the time of the trial of this case, he was not working for the company.

The company began business in 1923. Sim T. Lake, secretary and treasurer of the company, testified that the things ordinarily and commonly done by the company in carrying

on its business were "the manufacture and sale of sandwiches, sale of cold drinks, tobacco and other merchandise, purchase of real estate for locations and erection and repair of buildings thereon." R. W. Jackson testified that he was president of the company, and had been since its incorporation in October of 1923. That the usual and ordinary business of the company was "operating sandwich shops from which they sell various kinds of sandwiches, and allied products, buying and leasing properties, erecting and maintaining buildings."

■ The question to be determined is whether Croswell was an employee, under the express terms of the policy, in evidence, and under the statutes of this state defining that relation. Article 8309, § 1, par. 3, R. S. 1925, defines "employee" as follows: " 'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written * * * except one whose employment is not in the usual course of trade, business, profession or occupation of his employer." Whether the employment of a workman injured while engaged in a particular task is in the usual course of the business or occupation of his employer is ordinarily a question of fact. To make such issue a question of law, the testimony must not only be without contradiction, but must be so conclusive that reasonable minds cannot differ as to its effect. The charter of appellee shows that it was not chartered for the purpose of building houses or structures, but for the manufacturing and selling of edible and table products and the purchase and sale of such products. The evidence shows that the ordinary and usual business conducted by the company was the manufacture and sale of sandwiches and allied products. While it is true that in securing properly arranged houses or structures in which to carry on their baking, roasting. and curing operations, they sometimes remodeled rented structures and built new ones for such purpose, still it is undisputed that such was not the business for which it was incorporated and not the ordinary and usual business by it conducted. It was an outside matter occasionally done in the course of their authorized business, and only incidental thereto. We do not think it can be said that appellant was an employee of the company within the definition of that term by article 8309, § 1, par. 3, R. S. 1925, quoted supra; but to the contrary, the evidence clearly shows that he was one "whose employment was not in the usual course of trade, business, profession or occupation of his employer." The exception contained in said paragraph of said article (article 8309, § 1, par. 3) excludes appellant, because it clearly appears that he was doing carpenter work in erecting a building for the company, which work was not in its ordinary or usual business. Oilmen's Reciprocal Ass'n v. Gilleland

(Tex. Com. App.) 291 S. W. 197; Texas Employers' Ins. Ass'n v. Sewell (Tex. Civ. App.) 32 S.W.(2d) 262 (writ refused).

In the Gilleland Case, supra, the employer was engaged in the laundry business. On account of the increased volume of business, it became necessary to increase and enlarge its water supply. On this account it caused two additional wells to be sunk to such depth that it became necessary to install a larger and more powerful pumping equipment. For this purpose it caused an excavation to be made near the two wells, which was sixteen feet deep, eighteen feet long, and six feet wide. To prevent the walls of the excavation from caving in, it was necessary to line or wall it with brick. Gilleland was a brick layer, and, at the time he was killed, had been employed by the laundry company, with other workmen, to build the brick walls lining the excavation. While so engaged, one side caved in and buried him under several tons of earth, causing his immediate death. In reversing and rendering the judgment, the Supreme Court, through the Commission of Appeals, held that Gilleland was not, at the time of his injury and death, engaged in the usual course of his employer's business or occupation.

In the case of Texas Employers' Insurance Ass'n v. Sewell, supra, the employer, the Mexia Textile Mills, was engaged in manufacturing textile products. The mills had erected several cottages to be occupied by persons who worked in the mills. Sewell was not one of their regular employees, but was employed for the sole purpose of painting the cottages. While so engaged he was injured. The Waco Court of Civil Appeals held that under the statutory definition of "employee," and the facts in evidence, Sewell was not entitled to compensation, not being engaged in the usual course of his employer's trade or business, and reversed and rendered the judgment. This holding was approved by the Supreme Court by its refusing a writ of error. See, also, Morse v. New Amsterdam Casualty Co. (D. C.) 30 F.(2d) 974, 976, affirmed (C. C. A.) 37 F. (2d) 100; Holbrook v. Olympia Hotel Co., 200 Mich. 597, 166 N. W. 876.

Among others, appellant cites us to the cases of Georgia Casualty Co. v. Gibson (Tex. Civ. App.) 11 S.W.(2d) 191; Maryland Casualty Co. v. Williams (Tex. Civ. App.) 47 S.W.(2d) 858, 859; and Commercial Standard Ins. Co. v. De Hart, (Tex. Civ. App.) 47 S.W.(2d) 898, as supporting his contention that under the law and the facts he is entitled to compensation. We think these cases are easily distinguished from the instant case on the facts.

In the Gibson Case, the defense was that he was not an employee and was not working in the usual course of his employer's business when he received his injury. Gibson was an employee of the Kean Lumber Company. The insurance policy described the business of the employer as "lumber yards and building ma-

terial dealers," and also as "planing and molding mills," and its place of business on Beckly street in Oakcliff, the city of Dallas. The lumber company was constructing some eighteen or twenty houses on Twelfth street in Oakcliff, some distance from its place of business. The material going into this construction was hauled from the lumber yard to the place of construction, and some of it put in a shed to await its use in the buildings. Part of the stored material was window sashes and window weights. Gibson did not work in the lumber yard, but was to wait upon the carpenters in the construction of the buildings and to pour concrete. At the time he was injured he was bringing window weights from the shed to the place where they were to be used. The evidence showed Gibson a regular employee and carried on the pay rolls of the company, and at the time of his injury he was engaged in delivering material to be used in the construction of the buildings, and hence in the usual course of his master's business. Not so here. Appellant was not on the pay rolls as a regular employee of Pig Stands Company, Inc., but was working as a carpenter in erecting one stand or place to do business, not in the usual course of business of said company; its business being that of manufacturing sandwiches and kindred products and selling same.

In the Williams Case, Williams was doing carpenter work for the Coca Cola Bottling Company in Dallas, Tex., and while so working received an injury from which he died. Said company, at the time Williams received his injury, had its principal office in the city of Dallas, which was its headquarters. In addition to its refrigeration machinery in its Dallas plant, it maintained eight other refrigerating units in its plants in surrounding territory. Woodwork for all such units was done from time to time by its regular force of carpenters. Williams had for about two weeks been employed as a member of its regular force of carpenters before the accident. The company carried compensation insurance covering its employees in the Dallas plant where Williams worked. There is a vast difference in the facts of that case and the instant case. There the employer kept and maintained a regular force of carpenters to do certain work, and they were covered by compensation insurance. Williams for some time had been and at the time of his injury was a member of this carpenter force. Not so in the instant case. Croswell was not a regular employee of the Pig Stands Company, Inc., but was doing casual work on one job, which was not in the usual course of the company's business, 'and the company did not carry insurance covering carpentry workers.

In the De Hart Case, the Bryan Amusement Company operated three shows. Extensive repairs became necessary on one of them. The company shut it down and employed an architect, foreman, and corps of workmen, including carpenters, bricklayers, painters, electricians, and laborers to do the work, and applied for and obtained compensation insurance to cover its said employees while doing this repair work, which was extensive costing some $25,000, and requiring three or more months to complete. De Hart was doing carpenter work when injured. While the Bryan Amusement Company, the employer, was engaged in the operation of picture shows, yet if it so desired it could itself have the repair work done on its place of business and it had the right to carry compensation insurance to protect its employees while doing such repair work, which it did. In the instant case, no insurance was carried by the Pig Stands Company, Inc., covering occasional workers doing repair, remodeling, or construction work on the stands it operated.

There is a rider attached to the original insurance policy covering employees such as Croswell, but it is undisputed that the application for such insurance was made and the premium therefor paid and the rider attached to said policy after Croswell was injured. This insurance could not inure to Croswell's benefit, for it was not in existence at the time he received his injury.

It appearing without dispute the appellant, at the time of his injury, was not an employee of the Pig Stands Company, Inc., under the definition of "employee" contained in the statute, and, therefore, not engaged in the usual course of his employer's business or occupation, and his employer not carrying insurance covering him in the work he was doing when he received his injury, the court did not err in directing the verdict, and the judgment must be affirmed, and it is so ordered.

Affirmed.