## GAINES v. TRADERS & GENERAL INS. CO. et al.

### No. 4640.

Court of Civil Appeals of Texas. Amarillo.

Oct. 5, 1936.

Rehearing Denied Jan. 4, 1937.

L. B. Godwin and Kimbrough & Boyce, all of Amarillo, for appellant.

T. R. Boone and Kearby Peery, both of Wichita Falls, and Lightfoot & Robertson, of Fort Worth, for appellees.

MARTIN, Justice.

Appellant was injured while working as a carpenter on a per diem basis for the Vernon Meat Company. He filed a claim under the Texas Workmen's Compensation Law (Rev.St.1925, art. 8306 et seq., as amended, Vernon's Ann.Civ.St. art. 8306 et seq.) with the Industrial Accident Board. Thereafter, he filed this suit in district court to set aside an award of that Board, which was unsatisfactory to him. His cause of action was submitted on numerous special issues, all answered favorably to him. Upon a motion, non obstante veredicto, judgment was entered for appellee.

Appellant's contentions here are briefly in substance:

1. That his injury occurred while working as an employee for Vernon Meat Company in the usual course of the trade business and occupation of his employer, and therefore came within the terms of article 8309, § 1, par. 3, R.S.1925, and of the workmen's compensation policy issued by appellee to said company.

2. If not, such policy by its terms enlarged the liability of appellee under the Texas Workmen's Compensation Law so as to include him as an employee and to cover the injury sustained by him.

3. That if mistaken in both of these contentions, it was intended by both contracting parties to so include him, and the omission to do so was due to a mutual mistake of the contracting parties, and asked for a reformation of the policy and for judgment under it as so reformed.

4. Finally, he contends that appellee was estopped to set up the defense that he was so included.

His pleadings support all these contentions, and are not here questioned. The only question before us is the sufficiency of the evidence to support either.

The Vernon Meat Company was a wholesale dealer in "meats, fish and poultry" in the town of Vernon. It decided to construct a new addition to its plant, and to place therein a storage vault. Appellant, who had done casual jobs for this company sometimes, but was not a regular employee, was hired by the day as a carpenter on such work. He describes the incident of his injury as follows: "We were constructing a cold-storage room, and placing the trackage upon which to hang meat. A necessary scaffold was about 6 ft. above the concrete floor and owing to a sudden collapse of it or a part thereof I fell, unobstructed, upon and against the said floor and some metalic substances."

The stipulations of the policy, thought to be controlling, are as follows:

"All business operations, including the operative management and superintendence thereof, conducted at or from the locations and premises defined above as declared in each instance by a disclosure of estimated remuneration of employees under such of the following Divisions as

are undertaken by this Employer are declared and set forth below.

scribed in an endorsement attached to this Policy, each of which statutes is herein

| Classification of Operation | Estimated Total Annual Remuneration. | Rate per $100 of Remuneration. | Estimated Premium. |
|---|---|---|---|
| 8021—Meat, Fish or Poultry Dealers, Wholesale (N. P. D.) when located on or adjoining same premises with 2089, 'Packing Houses'................... | $3600.00 | $1.92 | $69.12 |
| 8810—General Office Employees (N O C).. | $2400.00 | .08 | 1.92 |
| 8742—Outside Salesmen, Collectors and messengers (wherever engaged) who do not deliver merchandise.............. | $4800.00 | .51 | 24.48 |
| 7380—Chauffeurs and their Helpers, Commercial, including incidental garage employees ........................... | $4000.00 | 1.87 | 74.80 |

Minimum Premium $27.00
Adjustment of premium Quarterly

Estimated Total Annual Premium $170.32
Deposit Premium $70.00.

"The foregoing enumeration and description of employees include all persons employed in the service of this Employer in connection with the business operations above described to whom remuneration of any nature in consideration of service is paid, allowed or due together with an estimate for the Policy Period of all such remuneration. This enumeration and description with the estimated remuneration shall also include the President, any Vice-President, Secretary or Treasurer of this Employer, if a corporation, if actually performing such duties as are ordinarily undertaken by a superintendent, foreman or workman, but any such designated officer not so engaged shall not be included in such enumeration, description or estimated remuneration. The foregoing estimates of remuneration are offered for the purpose of computing the advance premium. * * *

"This Employer is conducting no other business operations at this or any other location not herein disclosed—except as herein stated: No exceptions. * * *

"To Pay Promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due,

"(1) To such person because of the obligation for compensation for any such injury imposed upon or accepted by this Employer under such of certain statutes, as may be applicable thereto, cited and de-

referred to as the Workmen's Compensation Law, and

"(2) For the benefit of such person the proper cost of whatever medical, surgical, nurse or hospital services, medical or surgical apparatus or appliances and medicines, or, in the event of fatal injury, whatever funeral expenses are required by the provisions of such Workmen's Compensation Law.

"It is agreed that all of the provisions of each Workmen's Compensation Law covered hereby shall be and remain a part of this contract as fully and completely as if written herein, so far as they apply to compensation or other benefits for any personal injury or death covered by this Policy, while this Policy shall remain in force. Nothing herein contained shall operate to so extend this Policy as to include within its terms any Workmen's Compensation Law, scheme or plan not cited in an endorsement hereto attached. * * *

"This agreement shall apply to such injuries so sustained by reason of the business operations described in said Declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said Declarations or elsewhere in connection with, or in relation to, such work places.

"The premium is based upon the entire remuneration earned, during the Policy

Period, by all employees of this Employer engaged in the business operations described in said Declarations together with all operations necessary, incident or appurtenant thereto, or connected therewith whether conducted at such work places or elsewhere in connection therewith or in relation thereto; excepting however the remuneration of the President, any Vice-President, Secretary or Treasurer of this Employer, if a corporation, but including the remuneration of any one or more of such designated officers who are actually performing such duties as are ordinarily undertaken by a superintendent, foreman or workman. If any operations as above defined are undertaken by this Employer but are not described or rated in said Declarations, this Employer agrees to pay the premium thereon, at the time of the final adjustment of the premium.

\* \* \*

"No condition or provision of this Policy shall be waived or altered except by endorsement attached hereto signed by the President, a Vice-President, Secretary, or Assistant Secretary of the Company; nor shall notice to any agent, nor shall knowledge possessed by any agent, or by any other person, be held to effect a waiver or change in any part of this contract.

\* \* \*

"This policy is issued by the Company and is accepted by this Employer with the agreement that the classifications and rates of premium are approved by and are subject to modification by the Board of Insurance Commissioners of the State of Texas in accordance with the manual and rating plans established by the Board of Insurance Commissioners such approval being in accordance with the authority imposed in the Board of Insurance Commissioners by law. Modification of rates of premium, either expressed in the policy or upon any endorsement thereafter attached, shall be expresssed by endorsement bearing the approval of the Board of Insurance Commissioners and naming the effective date of such change.

"This endorsement, together with the Policy to which it is attached, is the form prescribed by the Board of Insurance Commissioners in accordance with the authority imposed in the Board of Insurance Commissioners by law. Any contract or agreement not written into this form shall be void and have no effect."

The policy herein sued on, containing the above, was delivered to and accepted by said Vernon Meat Company without complaint, and was in full force and effect on the date of appellant's injury.

An "employee" is defined by the Texas Workmen's Compensation statute (article 8309, § 1) as follows: "'Employe' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer."

We think it is plain, under repeated decisions construing said statute, that appellant's injury did not occur while engaged as an employee in the usual course of the business of his employer. The *usual* business of a wholesale meat dealer does not include the construction of new buildings. Practically this identical question was decided by Judge Powell in Oilmen's Reciprocal Ass'n v. Gilleland (Tex.Com.App.) 291 S.W. 197, 201; see, also, Croswell v. Commercial Standard Ins. Co. (Tex.Civ.App.) 56 S.W.(2d) 918, 921.

We can add nothing to the reasoning of these authorities. They require a ruling from us adversely to appellant's first contention.

Nor do we think the policy upon its face includes carpenters within its terms, or so enlarges the liability of appellee as fixed by the Texas Workmen's Compensation Law as to include appellant as a beneficiary thereunder. The specific classification of employees named in the policy as set out above not only fails to include appellant, but we think affirmatively excludes him. The numerals which precede the classification of employees intended to be included are the code numbers of such classes, as we understand the record. The code number for carpenters is shown to be 5403. Their compensation rate, as prescribed by the Insurance Commission, was $7.99. No such code number appears above, and the highest compensation rate shown thereon is $1.92. The specific enumeration of employees fails to include them. The Vernon Meat Company with this policy before it had no right to think its terms included appellant. These type-

written specific designations would, we think, control the more general printed one, in case of a conflict. There is a more general printed description of the persons included in the original policy which we have before us, and which it is argued shows liability. We are of the opinion that taking the policy as a whole, and giving effect to typewritten specific designation of employees, and to the clauses which plainly evidence an intent to cover only such employees as are protected by the Workmen's Compensation Law, that the terms of same were not intended to cover a casual employee, working by the day as a carpenter in employment not in the usual business of his employer. In the first case cited supra, the court's language is: "The above quotation is representative of the views of those courts sustaining an award like the one in the instant case. Under a holding of this kind, any employment which would be helpful or essential to a business, however infrequently such necessity might arise, would be compensable. With all due deference to the courts upholding this view, we do not think an occasional situation is one arising in the 'usual course' of a business. Practically every employment is for a purpose essential to the business of the employer. Otherwise, no such employment would exist. Consequently, such a construction practically eliminates this word 'usual' from the statute. This should not be done by the courts." It is vigorously argued that appellant's wages were included in the pay roll of said meat company, and appellant knowingly collected and retained a premium thereon. The evidence fails to show that it knew of the above situation as hereafter discussed. This precise contention was answered in the case of Reed v. Mapstone Bros. et al., 205 App.Div. 767, 200 N.Y.S. 304, at page 306, as follows: "While his wages were included in the pay roll of the partnership business, from which the carrier adjusted the insurance premiums, nothing indicated to the carrier that these wages could cover any other employment than is specified in the policy."

We call attention here to the stipulation of the policy that it is the form prescribed by the Board of Insurance Commissioners; that the classification and rates of premium are approved by and subject to modification by such Board. The policy provides further:

"To pay promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due. * * *

"It is agreed that all of the provisions of each Workmen's Compensation Law covered hereby shall be and remain a part of this contract as fully and completely as if written herein, so far as they apply to compensation or other benefits for any personal injury or death covered by this Policy, while this Policy shall remain in force."

It appears here the parties themselves construed such policy as one under the Texas Workmen's Compensation Law. The preliminary requisites to establish liability under such law were complied with by appellee. This is not mentioned as of controlling importance, but only as a circumstance to show that the terms of the policy as written were of such character as to indicate to appellant a cause of action inconsistent with his present contention. We think he correctly interpreted the policy.

The last two contentions both turn on the one question of whether or not appellee had notice of the situation detailed above at such time and under such conditions as would make it liable. Otherwise expressed, if the authority of its local agent was broad enough to enable the appellant to invoke the doctrine of imputed notice or to show actual authority to make the contract of coverage claimed, appellant's contentions would present apparently a sound proposition of law.

 Appellee had as its agent at Vernon one R. H. Coffey. He solicited insurance, forwarded applications therefor, delivered policies after their issuance by appellee, and collected the premiums thereon. His appointment as soliciting agent was accompanied by the following stipulations in writing:

"No agent has blanket authority to bind the company on any compensation line. Specific authority on any individual risk will be given by the Home Office only after full information has been furnished us and the risk accepted by our under-writing department.

"The Company shall not be liable until the line is formally accepted by our underwriting department. * * *

"That the company shall have the right at any time to reject any risks submitted and the agent shall not be entitled to any commissions on any such risks, and that the agent shall have no authority to make, add to or in any way alter any policy of insurance, or other contract affecting the company, nor to waive any of the company's rights thereunder."

The policy itself provides: "No condition or provision of this policy shall be waived or altered except by endorsement attached hereto, signed by the President, a Vice-President, Secretary or Asst. Secretary of the Company; nor shall notice to any agent, nor shall knowledge possessed by any agent, nor by any other persons be held to affect a waiver or change in any part of this contract."

It appears without dispute from the mouth of appellant's own witness that appellee was not advised that appellant was working or would work as a carpenter on any building for said company, or that he was included in the pay roll of said company. The testimony shows, we think, conclusively that all appellee knew of the situation detailed above prior to appellant's injury was contained in the face of the policy quoted above. It does appear that Coffey, its local agent, knew all these facts and pointedly told the said Vernon Meat Company that it had coverage for all its employees, including appellant. It further appears he was included in the pay roll of said company, but such fact was not known to appellee, unless we are able to apply here the doctrine of imputed notice. It sufficiently appears that it was the intention of both the agent Coffey and of the said Vernon Meat Company to provide coverage for employees in appellant's class, and that such company was led to believe by Coffey that it had such a policy. We are of the opinion that it conclusively appears that Coffey's authority was not broad enough to give him authority to bind the insurance company in a matter of this kind. There was therefore no imputed notice. The mistake was unilateral —not mutual. There could be neither ratification nor estoppel without either actual or imputed knowledge of the transaction. We reproduce here statements from authorities believed applicable:

"As a general rule, in order that a ratification of an unauthorized act or transaction of an agent may be valid and binding, it is essential that the principal have full knowledge, at the time of the ratification, of all material facts and circumstances relative to the unauthorized act or transaction. * * *

"In order to make this rule operative the principal must know the actual facts and not merely what the agent, who is himself deceived, supposed were the facts.

"If the material facts have been suppressed or are unknown, although the principal has approved the agent's acts, there is no valid ratification, because of its being founded in fraud or mistake, and the principal is at liberty to repudiate his assent and assert his rights in other ways; and it matters not whether the principal's want of knowledge is due to designed or undesigned concealment or willful misrepresentation on the part of the agent or his mere inadvertence." 2 C.J. pp. 476, 477, 478.

"To justify a conclusion that the defendant is estopped, it must be made to appear that he spoke or acted with actual or imputed knowledge of the circumstances, and that he knew or ought to have known or foreseen that the plaintiff would be deceived." 17 Tex.Jur. pp. 138, 139.

"Again, although it has been broadly asserted that knowledge of facts coming to a local agent when taking the application is the knowledge of the company employing him, there are many situations in which no such imputation is indulged. This notice to an agent authorized merely to take applications and deliver policies does not bind the company if the application expressly provides that no agent or solicitor can alter or make contracts for the company, nor waive any stipulation or requirement of the application or policy. Nor are the knowledge and acts of a mere soliciting and premium collecting agent, as to an attempted change of beneficiary in a manner at variance with the terms of the policy, imputed to the company. And where an insurance agent's authority is confined to a very narrow range, his knowledge and conduct as to matters outside thereof may not be imputed to his principal. It also has been declared that knowledge acquired by a mere broker in soliciting insurance is not imputed to the insurer." 24 Tex.Jur. p. 817, § 112.

"Notice given to an agent is not notice to the principal unless it be shown that the authority of the agent extended to the acceptance of such notice. 'The word

agent, as used in this connection, means the person who has power to act for the principal with reference to the very subject matter to which the notice relates, and does not include a person who has no such power, though he may have power to act for the principal with reference to similar subjects.'" 2 Tex.Jur. p. 570, § 162.

"We shall now proceed to show that the plaintiff in error is not estopped from urging such defense, and has not waived same, by reason of the fact that its soliciting agent, Harris, was told of Benton's real physical condition when the application was made. The undisputed evidence shows that the authority of the soliciting agent, Harris, was limited by plaintiff in error to soliciting and receiving applications for insurance, and forwarding same to the company for its action thereon, and to delivering to the respective applicants such policies as might be issued by the company on the applications and forwarded to him for that purpose, and to collecting the initial premium thereon and forwarding same to the company. He had no authority from the company to make contracts for the company or to waive any stipulation or requirement of any application or policy." Southern Surety Co. v. Benton (Tex.Com.App.) 280 S.W. 551, 553.

"It is also no less true that, where it appears, as it does here, that the powers of the agent are limited to receiving and forwarding applications for insurance, he cannot make binding contracts on the company." Bankers Lloyds v. Montgomery et al. (Tex.Com.App.) 60 S.W.(2d) 201, 202.

After notice of appellant's injury containing the statement above quoted had been received by appellee, it issued one check to appellant for four weeks' compensation, which contained on its face the code number applying to carpenters. We do not interpret the allegations of appellant's pleading as showing a basis for recovery by estoppel on this transaction, if any it had. There is no allegation that appellant was misled to his injury thereby, nor any proof that appellee then knew all the facts of the transaction. Appellee could reasonably have concluded that a regular employee covered by the above policy was doing casual work as a carpenter under such circumstances as at least made his claim of some merit, and

thought it advisable to make this payment. It made none thereafter. We do not by this impliedly decide that liability could arise by any such act of appellant. This question is not necessary to here pass on.

In passing, we quote the recent language of Judge Hickman in the case of Texas Employers Ins. Ass'n v. Russell (Tex.Com.App.) 91 S.W.(2d) 317, 319: "A contract to issue a policy based upon a less rate than that prescribed by the insurance commission would be contrary to law and therefore void." If applicable to his case, appellant here insists upon the enforcement of an agreement to insure him based upon a rate of $1.92, when it conclusively appears the insurance commission has fixed a rate of $7.99 on the risk of the class to which he belongs.

We overrule all of appellant's propositions.

Judgment affirmed.

## On Motion for Rehearing.

At appellant's request, we add the following stipulation of the policy in question, omitted from the original opinion: "If any operations as above defined are undertaken by this employer, but are not described or rated in said Declarations, this employer agrees to pay the premium thereon at the time of the final adjustment of the premium in accordance with Condition C hereof at the rates, and in compliance with the rules of the Manual of Rates in use by the Company upon the date of issue of this Policy. At the end of the Policy Period the actual amount of the remuneration earned by employees during such Period shall be exhibited to the Company, as provided in Condition C hereof, and the earned premium adjusted in accordance therewith at the rates, and under the conditions herein specified. * * * All premiums provided by this Policy, or by any endorsement hereon, shall be fully earned whether any such Workmen's Compensation Law, or any part of such, is now or shall hereafter be declared invalid or unconstitutional."

We are of the opinion that the above and the clause, "the business operations described in said declarations, together with all operations necessary, incident, or appurtenant thereto," shown in the original opinion, do not render the present policy ambiguous, or enlarge the liability of appellee so as to include appellant as a

beneficiary thereunder. Plainly, the policy is to be construed as a whole. It was a workmen's compensation policy. Its printed portions, which include the above clauses, were in the form and language prescribed by the Board of Insurance Commissioners of Texas for such cases. It is a fair inference to say that the "employee" as defined in the Workmen's Compensation Law was the intended beneficiary. The definition of "employee" quoted supra excludes appellant. Appellant very confidently asserts that we are in direct conflict with the following three cases: Georgia Casualty Co. v. Gibson (Tex.Civ. App.) 11 S.W.(2d) 191, 193; Sheek v. Texas Co. (Tex.Civ.App.) 286 S.W. 336, and Blankenship v. Royal Indemnity Co. (Tex.Com.App.) 95 S.W.(2d) 366.

In all of these cases facts existed which justified the inference that the injury was received in the "usual course of the trade business," etc., of the employer—that is, the injured party was an actual employee, as defined by the Workmen's Compensation Law of Texas. We refer briefly to the first as typical of all. In the Gibson Case supra the policy covered "lumber yards and business material dealers." The lumber company undertook the construction of houses off · its premises. Gibson was a helper. He was injured while carrying window weights from a shed to one of these jobs. The court said: "In the instant case, the testimony is to the effect that the Kean Lumber Company was itself constructing these houses on Twelfth street; that it was using therefor material from its lumber yard, and was delivering same from the lumber yard for the use of the workmen actually engaged in the work of construction. The window weights that appellee was delivering to these workmen when he received his injuries had been hauled from the lumber yard to a shed to await the time for their use in the construction for a completion of the delivery, and it was actually in completion of this work of delivery from the lumber yard that appellee was doing when he was injured. *We think the court would have been authorized to have construed the contract of insurance to cover employees engaged in completing this delivery.*" (Italics ours.)

While Gibson was not included in the special enumerated classes of employees named in the policy, its general insuring provisions did apparently include such employees as were engaged in work "incident to or in connection with the operations of the lumber yard," which would include the delivery of material from its yard, such as "window weights." If here appellant had been injured while delivering dressed turkeys to a customer, even if in another part of town, the case would have some analogy. Suppose in the present case appellant had been injured while delivering "window weights" to a carpenter's job. Could it be seriously contended that he was engaged in work incident to a meat dealer's business, merely because of the presence in the policy of the quoted clauses, and others of somewhat similar import? We think not. Then why should he be included if injured while doing a casual carpenter's job on a building in course of erection?

We do not think the policy is ambiguous, and we are pursuing a settled policy in refusing to turn aside to state and discuss every contention with which zealous lawyers become infatuated during the course of litigation.

Motion overruled.