## THE SOUTHERN UNDERWRITERS V. I. C. PAGE.

No. 7475.  Decided October 16, 1940.
(143 S. W., 2d Series, 581.)

*Battaile, Burr & Holliday,* of Houston, for plaintiff in error.

Plaintiff, Page, was not an employee within the meaning of that term as defined by Article 8309, R. S. 1925, and consequently is not entitled to compensation, because it appears, as a matter of law, from the evidence that at the time of his injuries he was employed by the lumber company as a carpenter in a dry kiln at their plants, and that his employment was not in the usual course of the business, trade, profession or occupation of his said employer. Croswell v. Commercial Standard Ins. Co., 56 S. W. (2d) 918; Texas Emp. Ins. Assn. v. Sewell, 32 S. W. (2d) 262; Traders & Gen. Ins. Co. v. Powell, 44 S. W. (2d) 764.

*Howth, Adams & Hart* and *Mike Daughtry,* of Beaumont, for defendant in error.

MR. JUDGE TAYLOR of the Commission of Appeals delivered the opinion for the Court.

This is a compensation case. I. C. Page, defendant in error here, filed suit against the insurance carrier, The Southern Underwriters. The Southern Lumber Company was the employer..

Page recovered judgment in the trial court, which was affirmed by the Court of Civil Appeals. 118 S. W. (2d) 468.

The facts as to how the injury made the basis of the suit occurred, which are not in dispute, are stated in the opinion of the court below, and need not be restated here. The judgments below are predicated upon the jury's finding that Page at the time of his injury was engaged in the "usual course of the trade, business or occupation" of the Lumber Company. As stated by plaintiff in error, the insurance carrier, in its application for the writ, "the only question presented in this appeal is whether the evidence fails as a matter of law to raise the issue and to support the jury's finding that at the time of this injury Page was engaged in the usual course of the trade, business or occupation of his employer."

The company insists it is beyond cavil that Page was not engaged in the "usual course of trade, business or occupation" of his employer at the time of his injury; that the work he was doing was not essential to the operation of the company's business of manufacturing and selling lumber products, and that the work he was doing was assisting in building a new kiln that was merely an addition to the company's plant.

While the writ was granted upon this view of the case we have concluded upon further examination and consideration of the record that the facts are such that the trial court did not err in submitting to the jury the special issue inquiring whether Page received his injury while engaged in the usual course of the company's trade or business.

It is true that while Mr. Jackson, the company's general manager, testified that building the kiln was "an unusual undertaking" on the company's part and that the purpose of building it was to increase the company's capacity, the record contains other testimony from which the jury could reasonably conclude that the building of the kiln was essential to a continuation of the company's business as then conducted.

The opinion of the Court of Civil Appeals quotes extensively from the statement of facts, which we have examined in its entirety. The witness Thornton testified that a dry kiln "is necessary" to the business of an "up-to-date saw mill." He testified further that "a dry kiln is a part of the general system of a saw mill" of the kind referred to.

Mr. Page testified that he was a contractor; that a dry kiln "is a part of a saw mill system" and that "every saw mill he was ever around, * * * had one."

Mr. Jackson himself testified that *"as we carry it on"* (the business of the company in the manufacture of lumber and timber products) *the maintenance of a dry kiln is "an essential part of the operation of the business of the Southern Lumber Company * * *."* (Italics ours.)

It is in evidence that the company had other dry kilns in operation at the time of building the one upon which Page was working. There is also testimony to the effect that the company had dry kilns which had been in operation 15 or 16 years. When asked upon cross examination if good business did not dictate the building of the kiln that was under construction, just as good business would prompt the installation of "a new boiler, or a new saw or a different equipment in the mill," he replied that that was a little different, "because we change that kind of stuff constantly" and that the kilns "we had stayed there about 15 or 16 years." He admitted, however, in this connection upon further questioning that the company had machinery, some of which lasted that long.

The testimony is undisputed that the insurance carrier, at the time of Page's injury, sent him to a physician and that in about three weeks began paying him compensation at the

rate of $17.31 a week; and that the payments continued until he had received $259.69 before they were discontinued.

■■ It is apparent in the foregoing resume of the testimony that a fact issue was presented for the determination of the jury. As stated in Maryland Casualty Company v. Williams, 47 S. W. (2d) 858 (wr. dis.), "whether the employment of a workman injured while engaged in a particular task is in the usual course of the business or occupation of his employer is ordinarily a question of fact. To make such issue a question of law (the crux of the contention of the petitioner herein) the testimony not only must be uncontradicted but must be so conclusive that reasonable minds cannot differ as to its effect."

In the case quoted from refrigerating plants or units of a durable nature were in use by the employer and their *entire renewal and replacement was required only at long intervals,* only three units having been installed in about 25 years. One of the regular employes of the plant was in charge of the maintenance and replacement of the units. Shortly before the employee received his injuries the company decided to replace one of the units with a new unit costing approximately $10,-000.00. The injured employe was employed by the company as a member of its regular force of carpenters to work on the new unit about two weeks before his injury. This Court upheld the judgment of the Court of Civil Appeals in that case, predicated upon the view that that the evidence raised and supported an issue as to whether the employee when injured was engaged in the usual course of the business or occupation of the employer.

In the present case, in addition to the testimony analogous to that in the Williams case, is the circumstance of the payment to Page of compensation as pointed out above, which bears upon the question submitted to the jury.

■ The insurance company contends that the opinion of the Court of Civil Appeals in the present case is in conflict with Texas Employers Insurance Association v. Wright, 128 Texas 242, 97 S. W. (2d) 171. We are not in agreement with this contention.

In the Wright case the injured employee worked as a sweeper for his employer, Diamond Mill & Elevator Company, which was engaged in the business of milling and selling flour and feed, buying grain, milling it into flour and selling the flour and feed. The company decided to add the milling and sale of sweet feed to its business and to this end began the construction of a building with three floors and a basement

*to be used in connection with this added line of business.* It had not before had occasion to use or build a sweet feed mill. The employee who was working for the company as a sweeper, was taken out of its employ in its existing business and directed to assist in the construction of the sweet feed plant. While engaged as an employee in this work he was injured.

It is apparent from the foregoing statement that the company could have continued indefinitely to operate its business without constructing a sweet feed building. The employee was not when injured making repairs, or adding equipment of the kind in use in the company's business when he was employed as a sweeper.

Furthermore, there was no circumstance in evidence in the Wright case, or the case by which it was ruled (Oilmen's Recip. Ass'n. v. Gilleland (Com. App.), 291 S. W. 197), such as the payment of compensation to the employee after his injury, to indicate that the company's insurance policy still covered the employee engaged in constructing the sweet feed building. It is expressly stated in the opinion in the Wright case that there is no suggestion in the record that the policy issued to the company by the insurance carrier "covered by its terms any other employee than those engaged in the usual or ordinary business of the company." Its usual business was certainly not that of building "a sweet feed mill."

It is apparent from the above facts that the opinions of the Court of Civil Appeals in the present case and of this Court in the cases just referred to, are not in conflict; also that the facts in the present case are not such that reasonable minds cannot differ as to whether they conclusively establish that Page when injured was not engaged in the usual course of the trade or business of his employer. Maryland Casualty Company v. Williams, supra..

The judgment of the Court of Civil Appeals affirming that of the trial court is affirmed.

Opinion adopted by the Supreme Court October 16, 1940.